After argument, the President stated the circumstances of the case, and delivered the opinion of the court, in the following manner.
 

 Shippen, President.
 

 The facts agreed on both sides in this cause, are, that Robert Smith died intestate, indebted to several persons, and possessed of a considerable real estate, but not of sufficient personal estate to pay his debts; that his administrators aj>plied to the orphans’ court for an order to sell certain parts of the real estate, sufficient to pay the debts and maintain the children ; that such order was accordingly obtained, and that part of the real estate was sold for that purpose; that a subsequent application was made to the orphans’ court for a division of the remainder among the children ; that the part allotted to John Smith, the eldest son, on that division, was by him sold and conveyed to
 
 bond fide
 
 purchasers ; and that John Smith was himself an administrator, and neglected to discharge all the debts out of the sum arising from the sale of the lands ordered to be sold by the orphans’ court, but wasted the money, and is supposed to be insolvent. Some of the creditors of Robert Smith, whose debts remained unpaid, have since obtained judgments, and issued executions against the lands of the intestate, as well those sold by John Smith, under the order of division, as against the lands remaining unsold in the hands of the younger children. Three questions have arisen upion the argument.
 

 1. Whether, upon the death of the intestate, his lands were bound to the payment of the debts, in such a manner, as that they may be taken in execution and sold, notwithstanding the heir may have previously sold and conveyed the same to
 
 bond fide
 
 purchasers ?
 

 2. Whether the purchasers from one of the heirs, are bound to contribute to the other heirs ?
 

 3. Whether the purchasers under the order of the orphans’ court, are likewise bound to contribute ?
 

 I. In order to solve the first question, it will be necessary to take into view the several acts of assembly which subject lands to the payment of debts.
 

 The act of 1700 subjects all lands of debtors to sale on judgment and *482] execution against them, their heirs, executors, and administrators. *The act of 1705 repeats the same provision, with the restriction that, if the clear yearly profits will pay the debt in seven years, the land shall be delivered to the plaintiff upon a reasonable extent.
 

 
 *493
 
 Under these acts, the real estates of debtors have been held liable to sale
 
 by
 
 execution, whether
 
 they be
 
 living or dead; if living, under a judgment and execution against themselves : if dead, under a judgment and execution’ against their heirs, executors or administrators.
 

 By the intestate act, passed likewise in 1705, there is a particular provision in case of intestacy, that the administrator may sell such parts of-the real estate as the orphans’ court should allow of, as sufficient to pay the debts, maintain the children, and improve the residue of the estate. By this act, the surplusage, or remaining part of the intestate’s lands, not sold, or ordered to be sold, by virtue of that “act, is directed to be divided among the intestate’s widow and children, in the proportions therein expressed. Although the surplusage only is here directed to be divided, yet the construction has always been, that where there are no debts, or where they have been otherwise satisfied, the division shall, notwithstanding, take place, the act being considered as a general law of descents and distribution;
 

 It is contended, on one side, that the word surplusage in the latter act implies strongly that the remaining part only of the real estate, after payment of debts, is vested in the heirs, and that they shall take nothing until the debts are paid; or, if they do take them, it must be cum
 
 onere.
 
 On the other side, it is said, that the act was made for a particular purpose, that the word surplusage relates only to the remainder of the lands not ordered to be sold by the orphans’ court, and that there are no words which express or imply the surplusage to mean, after payment of debts.
 

 Upon the former construction, however, it is urged, that, immediately on the death of the intestate, there is a
 
 lien
 
 created on all the real estate in favor of the creditors. Without entering into the doctrine of
 
 liens
 
 under the words of this act, which would only affect the estates of persons dying intestate, I would choose to consider the question on broader ground ; that is, how far, and in what manner, the real estate of deceased persons, whether they die testate or intestate, is bound by our laws to the payment of their debts.
 

 That such real estates are a fund for the payment of debts, is not controverted; but it is contended, that they are no otherwise a fund after the death of the debtor, than in his lifetime; and that as he himself could have aliened before judgment, so his rejjresentatives could likewise alien, and that the lands are not spécifically bound, until judgment against the executors or administrators — that *if, indeed, they are then unsold, they remain a p, fund, but if aliened, no remedy remains except a personal one against *- the seller.
 

 The real and personal estates are both funds for the payment of debts. The personal estate, there is no doubt, is immediately bound, on the death of the debtor; it goes into the hands of the executor or administrator, and is assets in his hands for the payment of debts ; specific personal property, being in its nature perishable, may be sold for that purpose, and the executor or administrator is personally bound to answer for the value. In the case of the administrator, he must give security, before the administration is committed to him ; in the case of an executor, being intrusted by the testator, he gives no security, in the first instance ; but in case of probable insolvency, he may be compelled likewise to give security. In both cases,
 
 *494
 
 the whole personal' estate, or its value, is bound, from the moment of the debtor’s death, to the payment of his debts,
 

 (a)
 

 The real estate is, likewise, confessedly, a fund for the payment of debts. It is a fund, however, that does not actually go into the hands of the executor or administrator, as assets in the ordinary course ; but it is a fund, made such by positive law, in another form ; that is, creditors may issue executions, and sell it for the payment of their debts, on a judgment against the executor or administrator ; for it is not necessary, nor has it been usual, to bring the action against the heir. The lands, however, go into the hands of the heir or devisee, who gives no security, and between whom and the creditors there is no privity ; they are made a fund for the payment of all debts, and must necessarily have been intended by the legislature to be a certain, and not a precarious fund; for since it is declared, that the creditors may take them in execution on a judgment against the executor or administrator, it must be meant, that they should have the fruit of that execution ; and as there is the same reason, under the law, that they should be equally liable with the personal estate, from the death of the debtor, they must necessarily be liable in such a manner as to be answerable at all events, which can no otherwise be, than by considering them as specifically liable, in whosesoever hands they may be. If it were otherwise, they would prove no fund at all; for the devisee or heir, knowing that if judgments were obtained, he should lose his land, would, in every instance, where he apprehended debts beyond the amount of the personal estate, immediately sell them, and thereby entirely defeat the intent of the legislature, in making them a fund for the payment of debts.
 

 The mischief of this doctrine is still more striking, if we consider, that the estates of the inhabitants of Pennsylvania, out of the city of Philadelphia, are chiefly real estates, and if they were immediately alienable by the heirs, without being afterwards liable for the ancestor’s debts, few creditors to any amount would ever recover their debts, although, perhaps, the debts *4841 may rea% have been contracted on the credit of the lands. *Another J consequence might likewise follow, that where the father dies indebted, leaving sufficient real estate, and but little personal, if the heir or devisee, being likewise indebted on his own account, takes the land in the manner contended for, then
 
 his
 
 creditors, by obtaining judgment against him, before his father’s can obtain judgment against the executors, will recover their debts out of his father’s lands, whose creditors would in that case be entirely cut out. This would certainly be too unjust, and repugnant to the spirit of our laws, ever, to receive the sanction of a court of justice.
 

 On these grounds, it is, as I take it, that lands of deceased persons, have always heretofore been considered as liable to be taken in execution for debt, in the hands of a purchaser from the heir or devisee. It is a construction of the law that has so long prevailed, that it would be now very dangerous to unsettle it, as many titles to land may depend upon it.
 

 (b)
 

 Although there may not have been any express determination of this
 
 *495
 
 point, yet a point has been determined which is within the reason of the case. A widow’s right of dower commences with her marriage ; it is held so sacred a right, that no judgment, recognisance, mortgage, or any incum-brance whatever, made by the husband after the marriage,' can, at common law, affect her right of dower: even the king’s debt cannot affect her. Yet, it has been held, under our acts of assembly, for making lands chattels for-the payment of debts, that as to lands taken in execution, after the death of the debtor, the widow is barred of her dower. If the widow whose right initiated with the marriage, shall lose her dower in favor of creditors, by much stronger reason the heir, whose right did not commence until the death of the debtor, should be barred from taking the land discharged of the debts.
 

 H. The second question in this case is, whether, after a
 
 bond fide sale by
 
 one of the heirs, the purchaser is bound to contribute in aid of the other heirs, whose land remains unsold
 
 ?
 

 Where there is equal equity in two contending parties, it is always an unpleasant task to decide between them ; and in that case there can be no satisfactory rule but the
 
 strictum, jus.
 
 If there should, however, be any
 
 laches
 
 on one side, and none on the other, this, even on equitable principles, will have considerable weight in the decision.
 

 The rules of contribution, as they appear in
 
 Herberts case,
 
 in 3 Co. 18, are these — If a man is seised of three acres of land, and enters into a recog nisance or statute, and enfeoffs A. of one acre, and B. of another, and the third descends to the heir ; in this case, if execution is sued only against the heir, he shall not have contribution ; for, coming to the land without consideration, he sits in the place of his ancestor, and shall not have contribution against any purchaser. But if execution be sued against one of the purchasers, he shall have contribution against the other purchaser and the heir. So, *if judgment be obtained against a man that dies, leaving r*4gr two daughters, who make partition, in this case, if only one is L eharged, she shall have contribution; for, as one purchaser shall have contribution against another, so one heir shall have contribution against another heir, for they are
 
 in cequali jure.
 
 The
 
 dictum,
 
 that the heir shall not have contribution against any purchaser, clearly means any purchaser from the ancestor, and cannot, consistently with the case stated in Coke, mean any other. If, then, one parcener shall have contribution against another parcener, it is most clear, that one co-heir under our laws of descent, shall have contribution against another co-heir. But a distinction is made between a co-heir and a purchaser under him. Every purchaser, except in some special cases, stands in the shoe of the person he purchased from, and cannot have a better title than he had : and as to contribution, he holding under one of the co-heirs, must be considered as
 
 in cequali jure
 
 with the other co-heirs.
 

 One of the special cases, where a purchaser stands in a more favorable light than the person purchased from, is, where there is a secret trust, and the purchase is made without notice, and there the purchaser shall hold the land discharged of the trust. But there appears no similarity between that case and this, where the law of the land having made real estates chattels for the payment of the debts of the ancestor, every purchaser from the heir must be presumed cognisant of it, and is bound to take care, if he will make
 
 *496
 
 the purchase, to be secured against such debts. If he neglects this, he 6eems to confide in the seller, that he hath both the will and ability to do it.
 

 The hardship upon purchasers may, in particular instances, be great, but may generally be prevented by a proper caution. Where there has been a suspicion of out-standing debts, it has been very usual to make the purchase under an execution. At any rate, the fundamental security which the law has given to creditors should not be destroyed, or the title of co-heirs affected, by the omissions or temerity of purchasers.
 

 It is here suggested, that there may be probably sufficient in the hands of the younger children to pay the debts, without calling on the purchasers. But is it reasonable, is it just, or can it be legal, that the younger children should be stript of all their fortunes, and that the share allotted to the eldest son, who had no better right of exemption than they, should not bear part of the burden? especially, as those younger children had no participation in the sale, or wasting the money : nor was it by any precaution whatever, in their power, to prevent cither; whereas, it was in the power of the purchasers to be indemnified, if they had thought proper. Such a doctrine would enable the elder son, in most cases, to lay the whole burden upon the younger children, who are frequently helpless ; and during their minority at least, prevented from standing an equal chance with him.
 
 (a)
 

 *111. The remaining point to be considered, is, whether the purchasers under the order of the orphans’ court are likewise bound to contribute ? These purchasers, I acknowledge, appear to me to stand in a very different light from the voluntary purchasers from the eldest son. The law, for the benefit of the families and creditors of persons dying intestate, has vested the orphans’ court with a power to direct the sale of certain parts of the intestate’s real estate, for the payment of his debts. The same law has directed the means of information to be given to the court, to prevent imposition and the unnecessary dismemberment of the real estate. The power given to the orphans’ court by this act is very great, and ought to be discreetly exercised ; but when the sale is made under their order, it is certainly a good one. The administrator is vested with as complete a power to sell the specified part of the real estate, as he has, by the common law, to sell the personal; and the purchasers from him ought to hold as securely in the one case, as the other. To say, that because the administrator is to exhibit upon oath an account of the debts, therefore, the purchasers are to look to the payment of those debts, is in effect saying, that the purchasers are to look to the legal exercise of the power vested in the orphans’ court, who may, unquestionably, impose such terms upon the administrator, as are necessary to secure to the creditors and children, the consideration money arising from the sales; and such security has, in fact, been required in many instances by the orphans’ court in Pennsylvania. Besides, if the purchaser is to look to the payment of the debts, he must, likewise, look to the other objects for which the land is to be sold ; that is, the education and maintenance of the children, and the proper improvement of the residue of tha estate ; which no law founded in reason could require. The case of these purchasers, however,
 
 *497
 
 is not regularly before the court; tbeir lands have not been taken in execution, neither are they comprised within the rule,
 
 (a)
 

 The rule, as it stands, must be discharged.
 

 (a)
 

 See Keyzey’s case, 9 S. & R. 72.
 

 (b)
 

 s. p. Morris
 
 v.
 
 Smith, 1 Yeates 243; Wilson v. Watson, Peters C. C. 273.
 

 (a)
 

 See Guier v. Kelly, 2 Binn. 299; Wilson v. Watson, Peters C. C. 273; Bryant v. Hunter, 3 W. C. C. 48; Nailor v. Stanley, 10 S. & R. 450; Miller v. Stout, 2 Bro. 294.
 

 (a)
 

 In Moliere’s Lessee
 
 v.
 
 Noe, 4 Dall. 450, it was expressly decided, that a purchaser under a sale by order of the orphans’ court, took the land free from judgments and other debts of the intestate ; but, it seems, not discharged from mortgages. And see McPherson v. Cunliffe, 11 S.
 
 &
 
 R. 432.