MORRIS's Lessee *v.* SMITH.

*Decedent's debts.*
</div>

The lands of a decedent may be taken in execution on a judgment obtained against the personal representative, notwithstanding an intermediate *bonâ fide* conveyance by the heir-at-law, for a valuable consideration.

*Quære?* Whether, in such case, a *scire facias* against the terre-tenant is required?

EJECTMENT for twenty-three acres in Philadelphia county. It was agreed, that John Hunt (under whom both parties claimed) died seised of the premises; and the lessor of the plaintiff's immediate title was derived under a judgment obtained against Hunt's executors, in June term 1786, at the suit

---

(a) The humanity of the jury being gratified by an acquittal of the prisoner, from the capital charge, he was indicted and convicted, on the same facts, for a misdemeanor. By the reform of our penal code, arson is no longer a capital crime.

of Thomas Corbin, for 105*l.* 10*s.* ; upon which there was an execution, a sheriff's sale, and a sheriff's deed to the plaintiff, dated the 5th of June 1787.

The defendant relied on this statement : Hunt died the 31st of March 1778, having made his will, and leaving an only son, who sold and conveyed the premises to William McCullough, on the 26th of December 1778, for a full and valuable consideration. But it was decided in the year 1786 (*a*) that such a conveyance by the heir-at-law, or devisee, was not sufficient to protect the real estate from creditors ; and then, the widow and executrix of Hunt confessed a judgment to Corbin, upon which the premises were taken in execution, and sold to the lessor of the plaintiff, but, in truth, for the widow's use. John Hunt, the father, had also left a considerable real property in New Jersey ; yet, to defeat McCullough's purchase, and to get clear of the law of Pennsylvania, that property was left unsold and unappropriated ; and the premises pursued to satisfy this voluntary judgment.

But the plaintiff, to rebut the insinuation of collusion and fraud, proved satisfactorily, that Hunt had purchased the lands in Pennsylvania, as well as in New Jersey, with money borrowed from Corbin ; for the amount of which he had given his bond, dated the 1st of January 1762 ; that several partial payments were indorsed *on the bond ; that on the 26th of October [*120 1768, the balance being then considerable, Hunt conveyed to Corbin a tract of land in New York, and several tracts of land in New Jersey, including the greater part of the property mentioned by the defendant ; that on the 6th of September 1787, the plaintiff conveyed the premises to James Pemberton, for the nominal consideration of five shillings ; and that Pemberton executed a declaration of trust, to the use of Corbin.

Upon this development of the case, however, two points were made, and at the request of the counsel, reserved for future argument :

1st. Whether the land could be sold by virtue of the judgment, without a *scire facias* against the *terre tenant ?*

2d. Whether the land was liable for the testator's debts, after being aliened by the heir-at-law, *bonâ fide,* and for a *valuable consideration ?* (*b*)

<div align="right">Verdict for the plaintiff. (*c*)</div>

---

(*a*) Moore *v.* Few, 1 Dall. 170.

(*b*) It does not appear that these questions were ever argued in the present suit. But see Graff *v.* Smith, 1 Dall. 481.

(*c*) For a full report of the arguments of counsel, and the decision of the court in this case, on the second point, see 1 Yeates 230 ; where the opinions of the judges are to be found at length—all agree in the affirmative. The first point is not noticed in this report ; but from an examination of the record in the supreme court (April term 1793), it appears, that both the points were argued, and that then judgment was entered in favor of the plaintiff.