## Moliere's Lessee *v.* Noe.
### *Judicial sale.*

The purchaser of lands of an intestate, sold by an order of an orphans' court, holds them discharged from the lien of a judgment obtained against the intestate in his lifetime.

EJECTMENT, for a house and lot in Union street, between Second and Third streets. The plaintiff's title was briefly this : George Fudge was seised of the premises, in the year 1796, when Moliere, as the assignee of one Muston, instituted three suits *against him, upon several bonds, [*451 returnable to March term 1796, in which judgments were regularly obtained. Fudge died, and the judgments were revived against his administrators, by writs of *scire facias,* returnable to December term 1799 ; judgments were thereupon entered, on the 27th of December ; writs of *fi. fa.* issued, returnable the 28th of December, and were returned, " levied upon real estate, inquisition held, and property condemned." On the 15th of January, a *vend. exp.* issued, returnable to March term 1800, which was returned, that the premises had been sold to Moliere for $1000 ; and on the 3d of March 1800, sheriff Penrose executed a deed to the purchaser.

The defendant was tenant to Mary Beers, who claimed the premises under a sale made by order of the orphans' court, upon the petition of the administrators of Fudge—the intestate having left two minor children. The petition was presented in May 1797, with a list of the creditors of the estate, in which Moliere's judgments were referred to ; the order of the orphans' court was made in June 1797 ; the sale was effected in July ; and the administrators executed a deed to Mrs. Beers, for the premises (reciting the proceedings of the orphans' court), in consideration of $1200, on the 10th of August 1797. Subsequently to the sale, and receipt of the money, both of the administrators became insolvent.

On the trial of the cause, at *nisi prius,* in July 1806, two grounds of defence were taken : 1st. That Moliere had allowed Mrs. Beers to purchase and repair the estate, without giving her notice of his claim, though he was apprised of the order of sale by the orphans' court, and the proceedings under it. 2d. That upon the sale of the estate, by order of the orphans' court, it was discharged from all prior judgments, in the hands of the purchaser. On the first ground, both the Chief Justice (who sat at *nisi prius*) and the jury (as appeared from the charge and the verdict) were in favor of the plaintiff ; and the second ground was reserved for the decision of the court in bank.

The point reserved was argued on the 10th of December 1806, by *Levy, McKean, S. Levy* and *J. Sergeant,* for the plaintiff, and *Ingersoll* and *Hopkinson,* for the defendant : and the following sections of several acts of assembly became material in the discussion.

---

Moliere v. Noe.

By the 6th section of the act of 1705 (Hall & Sellers, 34),(a) it is provided, "That if any person or persons shall die intestate, being owners of lands or tenements within this province, at the time of their death, and leave lawful issue to survive them, but not a sufficient personal estate to pay their just debts and maintain their children, in such case, it shall be lawful for the *administrator or administrators of such deceased, to sell and *452] convey such part or parts of the said lands or tenements, for defraying their just debts, maintenance of their children, and for putting them apprentices, and teaching them to read and write, and for improvement of the residue of the estate, if any be, to their advantage, as the orphans' court of the county where such estate lies shall think fit to allow, order and direct, from time to time."

By the 21st section of the act of April 1794 (3 Dall. Laws, 530), it is provided, "that no lands, tenements, and hereditaments, so as aforesaid sold by the orphans' court, shall be liable, in the hands of the purchaser, for the debts of the intestate."

By the 2d section of the act of April 1794 (Ibid. 523), it is provided, "That no debts of deceased persons, except they be secured by mortgage, judgment, recognisance or other record, shall remain a lien on their lands and tenements, longer than seven years after the decease of such debtors, unless, &c."

By the 4th section of the act of April 1797 (4 Dall. Laws, 157), the same limitation is imposed on the lien of debts, unless a suit is brought, or a statement of the demand filed in the office of the prothonotary of the county where the lands lie, within the seven years.

For the *defendant*, it was insisted, that, by the act of April 1794, the purchaser, under an order of the orphans' court, held the land discharged of all the debts of the intestate, whether secured by judgments or not. The word debts includes judgments; and the legislature generally uses it, in that comprehensive sense. Hall & Sellers, 34, § 3, 6; Ibid. 132; 3 Dall. Laws, 522, § 1; Ibid. 523, § 1, 2; Ibid. 529, § 19; Ibid. 527; 4 Ibid. 157. This construction, however, does not extend to mortgages, which are a specific lien created by the act of the party; but only to judgments, to which, as the law gives the lien, the law may, also, take it away. 1 Dall. 481, 486. The words of the act are, then, clearly in favor of the purchaser; and it is not incumbent upon him to look to the application of the money. 9 Ann. c. 14, § 1; Lov. on B. 37; 2 T. R. 645; 2 Fonbl. 153.

For the *plaintiff*, it was answered, that the object of the act of 1794, was to provide for the sale of real estate, in order to pay debts at the instance of creditors, who had not obtained judgments, and therefore, could not themselves compel a sale of the land; that from the year 1705 to the year 1794, the sale was not accompanied with any condition, that the purchaser should hold the land free from the debts of the intestate; and the inconvenience to be remedied by that provision, arose from the latent claims,

---

(a) YEATES, Justice.—It has often been decided at *nisi prius*, that under this act, the orphans' court might order a sale of lands, although there were no minor children in the case.

Moliere v. Noe.

referred to in 1 Dall. 481, not from judgments, mortgages, or other liens of record ; and that words, however general, must *often be construed particular, in order to attain, without exceeding, the real object [*453 of the legislature. *Levinz* v. *Will*, 1 Dall. 430 ; Plowd. 109, 305 ; 2 East 135.

On the 20th of December 1806, the chief justice delivered the opinion of the court in the following terms.

TILGHMAN, Chief Justice.—This cause was tried before me at a court of *Nisi Prius*, held last July, when the point was reserved, which is now to be decided. Without entering into an unnecessary detail of facts, the question may be stated to be simply this : whether the purchaser of lands of a deceased person, sold by order of an orphans' court, since the 19th of April 1794, holds them discharged from the lien of a judgment, obtained against the intestate in his life.

Ever since the year 1705, the orphans' court have had power to order sale of such part of the land of persons dying intestate, as they judged necessary, for the payment of their debts, education and maintenance of their infant children, and improvement of the residue of the estate. But it was not until the passing of the act of the 19th of April 1794 (2 Dall. Laws 54), that any express provision was made with respect to the manner in which the purchaser should hold the land : I mean, whether it should be liable or not, in his hands, to the debts of the intestate. Yet, although there was no legislative provision, the public mind had, probably, received an impression from the sentiments of the late Chief Justice SHIPPEN, delivered when he was president of the Court of Common Pleas, in the case of *Graff* v. *Smith's administrators*. (1 Dall. 481, 486.) The question before the court, in that case, did not, it is true, regard a judgment-creditor; yet the expressions of the president are very general, and seem strongly to intimate an opinion, that the purchaser should hold the lands discharged even from judgments. I do not mean, however, to say, that that point was decided. After this decision, in the year 1789, came the act of the 19th of April 1794, which I shall now consider. (3 Dall. Laws 526.)

The 19th section gives the same power, which had been vested in the orphans' court by the act of 1705, that is to say, to order sale of such part of the lands, as they should, from time to time, think proper, for the payment of debts, maintenance and education of children, and improvement of the residue of the estate. The 20th section forbids the court to order a sale, until they have ascertained, in the manner therein mentioned, the amount of the intestate's personal estate, and of the debts due from him. The 21st section declares, " that no lands or tenements so as aforesaid sold, by order of the orphans' court, shall be liable in the hands of the purchaser, for the debts of the intestate."

If we consider the plain meaning of these words, the lands thus sold, are discharged from the lien of judgments. I think, no man, learned or unlearned, would understand the word debts, as *excluding judgments. [*454 The counsel for the plaintiff do not contend so ; but they argue, that although a judgment is a debt (taking the word debt in its largest signification), yet, to avoid great injustice and inconvenience, the legislature must be supposed to have intended only those debts, which were not a lien in the life of the intestate. The avoidance of injustice, and inconvenience, is

a most desirable object, and the court will always strive to attain it. But they must not overleap the bounds of their duty : they have power to construe laws, but not to make or alter them ; and where the meaning of the legislature is plain, the court have no right to regard inconveniences. General expressions have sometimes been construed, so as to be restrained to particular cases ; but to authorize such construction, it must appear, that the use of the words, in their general sense, would produce absurdity, contradiction or such flagrant injustice, as it could not be supposed the legislature meant to sanction. Upon a careful examination on the act in question, I cannot see that the discharge of the lands from the lien of judgment in the hands of the purchaser, will produce any such consequences. No inconvenience will result, if the orphans' court and the administrator do their duty. The lands will certainly sell better, for being discharged from liens ; and it makes no odds to the judgment-creditors by what person they are sold, provided they are sold fairly, and the proceeds faithfully applied. I am clearly of opinion, that they must be applied to the payment, in the first place, of the liens which existed in the life of the intestate, according to their respective priority.(a) There is no intimation in any part of the act, to the contrary, and to say that judgment-creditors should not have a preference, in the application of such proceeds, would produce this monstrous injustice, that those creditors would preserve the benefit of their lien, in case a man made a will, but lose it, if he happened to die intestate.

Before I dismiss this subject, I will give my opinion concerning debts due by mortgage, which were mentioned in the course of the argument. I conceive them to stand on a different footing from judgments, because the mortgagee is, strictly speaking, the owner of the land, and may recover it in an ejectment.[1] The mortgagor has no more than an equity of redemption ; nor have the orphans' court power to sell a greater estate than he is lawfully possessed of.(b) It will be seen, that in the 14th section of the act, where the order in which debts shall be paid is designated, there is no mention of mortgages, which evidently shows that the legislature took it for granted, that the mortgagee looked to the land for his security. The question now decided, is of importance to the public, particularly as different opinions have been entertained concerning it. As it must henceforth be considered as settled, I make no doubt, but the orphans' court, in the several counties, will

---

(a) On a sale of an intestate's lands, by order of an orphan's court, judgment-creditors are to be paid according to priority in date. Girard v. McDermott, 5 S. & R. 128.

(b) Judicial sales of land divest all liens, whether general or specific. Thus, when a legacy is charged upon land, a sheriff's vendee or a purchaser under a sale by an order of an orphans' court would take the land discharged from the lien of the legacy. McLanahan v. Wyant, 1 P. & W. 96 ; Barnet v. Washebaugh, 16 S. & R. 410 ; Graff v. Smith, 1 Dall, 486 note; see also *ante*, p. 151 note. The act of the 6th April 1830, does not embrace the case of a sale by order of an orphans' court.

[1] This is a mere *dictum*, and has not been received as law. Bowen v. Oyster, 3 P. & W. 243. Prior to the passage of the act of 23d March 1867, an orphans' court sale, for the payment of debts, discharged the lien of a mortgage given by the decedent in his lifetime. Morse v. Shultz, 13 Penn. St. 98. And it still has that effect, except in certain counties of the state, for which special provision has been made local statutes. For the legislation on this subject, see Purd. Dig. (10th ed.) 479.

use proper vigilance to prevent injury to judgment-creditors. *They have full power to see that sales are made fairly, and with due notice, and to exact security from the administrator, in proportion to the increased funds which may come to his hands. These precautions, assisted by the attention of the creditors to their own interest, will, I flatter myself, produce sales to the greatest advantage, and faithful application of their proceeds.

My opinion is, that the defendant, the purchaser at the sale ordered by the orphans' court, holds the land discharged from the plaintiff's judgment.

YEATES, Justice, who was present at the argument, informed the chief justice that he concurred with his opinion ; and—

BRACKENRIDGE, Justice, expressed his concurrence, generally.

Judgment to be entered for the defendant.