Marie J. Heitkamp, Respondent, v. John Beidenstein et al., Appellants.

### July 1, 1879.

One who, before the institution of proceedings to charge the estate with the testator's debts, purchases from one of several devisees to whom have been allotted specific portions of the estate, takes with notice of the risk, and his purchase will be made to bear an equal burden in the payment of the testator's debts with other portions of the estate.

Appeal from St. Louis Circuit Court.
*Affirmed.*

Finkelnburg & Rassieur, for appellants: The debt should be satisfied primarily out of any property in the possession of those who took by descent, before resorting to those who took by purchase for value. Where a creditor may resort to two funds, a court of equity may, in the furtherance of justice, compel a resort to one fund. — Story's Eq. Jur., sect. 559 *et seq.; Latrobe* v. *Tiernan,* 2 Md. Ch. 474; *Whittlesey* v. *Brohammer,* 31 Mo. 99. At

common law there is no such lien as plaintiff claims. The lien, as far as it exists, is the creature of statutes. — See Art. III., Administration Act, and Wag. Stats. 1352, sect. 7; *Ticknor* v. *Harris*, 14 N. H. 272. And it does not apply to purchasers. — *Whittlesey* v. *Brohammer*, 31 Mo. 99; *Den* v. *Jacques*, 10 N. J. L. 259; *Lovell* v. *Weston*, 20 Johns. 414.

KEHR & TITTMANN, for respondent: During the debtor's life, his specialty and simple-contract debts constitute no lien upon his real estate, unless reduced to judgment. But by his death their quality is changed, and they become a lien upon his real estate, which descends to the heir or passes to the devisee subject to the payment of the debts of the ancestor. —Rawle on Cov. for Title (4th ed.), 546; *Watkins* v. *Holman*, 16 Pet. 62, 63; *Hinton* v. *Whitehurst's Administrator*, 71 N. C. 66; *Metcalf* v. *Smith's Heirs*, 40 Mo. 573; *Heitkamp* v. *Biedenstein*, 3 Mo. App. 450. And the land is liable in the hands of a *bona fide* purchaser from the heir or devisee. — *Gore* v. *Brazier*, 3 Mass. 523; *Griswold* v. *Bigelow*, 6 Conn. 268; *Wyman* v. *Brigdon*, 4 Mass. 150; *Graff* v. *Smith*, 1 Dall. 481; *Richard* v. *Williams*, 7 Wheat. 59; *Morris* v. *Smith*, 1 Yeates, 224; *Vansyckle* v. *Richardson*, 13 Ill. 173. When partition was made, the burden of the plaintiff's claim rested equally on all the land divided in kind. Mrs. Schoenlan could not afterwards, by selling her lot, divest it of primary liability, and thus cast the entire burden of the debt upon the land of her co-devisees. — *Graff* v. *Smith*, 1 Dall. 481; *Foster* v. *Crenshaw's Executor*, 3 Munf. 514.

HAYDEN, J., delivered the opinion of the court.

This case has been here before, and is reported in 3 Mo. App. 450. It is now a bill in equity, brought to charge real estate left by George Beidenstein, the deceased debtor, with the payment of the plaintiff's demand. In regard to the demand there is no contest, and the question presented

is, upon what real estate, and by what liability, primary or secondary, the debt shall be charged. The debtor died in 1867, leaving a will by which he devised his estate, subject to the payment of his debts, absolutely to his widow, if she remained such ; otherwise, two-thirds to his four children and one-third to his widow. The widow administered, but upon her marriage, in 1869, letters were granted to her husband, T. Schoenlan.

The debtor died seized in fee of four lots in Devolsey's Addition and of a valuable farm. Of this farm, Louise, during her widowhood, sold, under power given her by the will to dispose of any part of the estate, certain portions, which portions passed by mesne conveyances to persons who are made defendants in this suit. The rest of the debtor's real estate was the subject of a partition suit between the devisees. In the course of this, to pay expenses and discharge encumbrances, four lots in Devolsey's Addition and ten acres of the farm were sold ; and the grantees of such purchasers are one class of the present defendants. The rest of the land was divided in kind, the mother taking her one-third under the will, and the children their two-thirds ; but specific parcels were awarded to each devisee.

In this partition, lot No. 5, containing twenty-one acres, was awarded to the mother, then Mrs. Schoenlan. This division took place in 1873. In April, 1873, Mrs. Schoenlan, with her husband, to secure a note, gave a deed of trust on lot No. 5, and this deed remained upon the property at her death, which took place before this suit was brought. In the course of administration upon her estate, and on the twenty-fourth day of September, 1874, the equity of redemption thus arising was sold by order of the Probate Court, and in October, 1874, was purchased by the present appellant, who, paying the encumbrance, became the owner in fee of lot No. 5, before any proceedings were taken to charge the land with the present demand. Thus, lot No. 5 passed to the appellant, while 2, 3, 4, and 6, awarded in partition to the

children, remain their property. It is upon this difference, and the fact of the purchase by him, that the appellant bases his contention that the court below, instead of charging, as it did, lots 2, 3, 4, 5, and 6 with primary liability, and the real estate which had been sold -to purchasers through power given by the will, or at the partition sale, with secondary· liability, should have charged lot No. 5 with only secondary liability.

Though a lien may, of course, be created by statute upon the lands of a deceased debtor, yet it seems misleading to say that, in case of simple-contract debts, equity recognizes a lien in those cases where upon final process it merely subjects particular property, which it regards as a fund, to the payment of a plaintiff's demand. Personalty and realty are both component parts of the fund which the creditor may pursue, though in different orders and by different methods, that the estate may be wound up, the debts paid, and the surplus distributed. In default of personalty, the law resorts to the real estate of the debtor, and the heir becomes liable for the debts of the ancestor to the extent of realty received. The debts are to be satisfied out of the real estate; and heirs, devisees, and their grantees take subject to this liability, even the purchaser for value holding the land *cum onere*, as otherwise the purpose of the law in the process of liquidation could be easily defeated. But when, as here, the fund is pursued in the hands of devisees, they are chargeable only distributively, and according to the assets which they have received. *Metcalf* v. *Larned*, 40 Mo. 572. Equity will, moreover, on a proper state of facts presented, marshal the assets according to the rules of equitable distribution. In so doing, it distinguishes between the purchaser who has bought in the course of the settlement and distribution of the estate, and the heir or devisee, who, as the phrase is, sits in the seat of his ancestor. In the case at bar, the contention is that the appellant should be placed in the second class of liability, with those

purchasers whose land is to be resorted to only in case of the plaintiff's failure to make her demand out of the lots awarded to the children. This would place the appellant in equal equity with those who purchased before and at the partition sale. But how can he claim that his position corresponds to theirs? Those who purchased, paid money which went to the estate, either to pay expenses or to enable the distributees to receive so much more. The appellant paid money which long afterward went to a devisee, not money which was assets in the process of settlement and distribution.

The appellant's part of the fund — the twenty-one acre tract — stands, relatively to the estate and the plaintiff's demand, in the same situation as the lots of the children, upon which, by the appellant's contention, the whole burden of the debt would be thrown. If the mother were alive, and had not encumbered her lot, she would contribute ratably. If the equal equity which then existed has ceased, the burden been lifted from her land and placed upon the children's exclusively, it must be her act that has thus affected their rights. But, they remaining passive, surely what passed between persons who to them were third parties could only by an anomaly in law be held to so injuriously alter their position.

In marshalling the assets as between the plaintiff and the appellant, these minor defendants are third parties, standing in no privity with the appellant. Where several parcels of land have descended or been devised to a person, who has conveyed a part and retained the rest, equity will, as a general rule, compel the creditor to resort in the first instance to the lands so retained. *Piatt* v. *St. Clair's Heirs*, 6 Ohio, 241 ; *McCormick's Appeal*, 57 Pa. St. 54. This rule works no injustice to the heir or devisee, since for the lands he has sold he gets an equivalent, while, as against his own grantor, a grantee who has paid his purchase-money has a clear equity. Nor does this rule operate to defeat the intention of the

testator. But the principle now contended for would, to take the case at bar, operate to charge the land of the children with the debt, when the intention was that the land of the widow and that of the children should bear their respective shares of all obligations. Older children, who should sell, would thus obtain a share it was never intended they should take, while minors might be deprived of their inheritance.

It is true that a purchaser, from a consideration of public convenience as well as from the inherent equities that often belong to his position, is protected with great care by the law; but this principle cannot be carried to the extent of depriving others of their just rights, and effect must be given to it under, and not in disregard of, the rules of equity. Though there are exceptions, the general rule of law is embodied in the maxim that one cannot transfer a greater right than he owns; and when one takes with notice of the risks attendant upon the title of his vendor, he can hardly be said to be in the position of a *bona fide* purchaser without notice. He knows that he is buying, not from a purchaser, but from one who took by the bounty of the testator, and it is always open to him to protect himself either by proper covenants or by adjusting the price which he pays to the risks which he knowingly takes.

The present case comes within the rule that assets will not be marshalled to the injury of one of several parties who, as against a creditor, stand in a position of equal equity. The appellant here is entitled to no advantage over the children. It is true that, upon the basis that where equities are equal, priority in time gives preference, equity charges, in the inverse order of alienation, land which is subject to a paramount encumbrance and which has been sold to different vendees; but, for reasons already stated, this rule has no application to the present case. The principle is that the vendor's property must be exhausted before recourse can be had to the vendee's; and the heir or

devisee ought, of course, to pay his debts out of his own property, and not out of that which he has conveyed to another. *Cooper* v. *Bigly*, 13 Mich. 474. See 2 Ld. Cas. in Eq. 296, pt. 1. In *Graff* v. *Smith's Administrators*, 1 Dall. 481, where the debtor died intestate, leaving several children, and, after a sale by order of the Orphans' Court of certain parts of his real estate, for payment of debts, the rest was divided among his children, and the eldest son sold his share to *bona fide* purchasers, the question arose whether the purchaser was bound to contribute in aid of the heirs whose land remained unsold. It was held that the purchaser stood in the shoes of the widow, and, holding under one of the co-heirs, must be considered *in æquali jure* with the others as to contribution.

The judgment is affirmed. All the judges concur.