## Rockwell *v*. Sheldon.

### In the Court below,

RODERICK SHELDON, DANIEL SHELDON, WILLIAM SHEL-
DON, SAMUEL CLARK jun. and LUCRETIA, his wife, *Plain-
tiffs ;* SOLOMON ROCKWELL, ALPHA ROCKWELL, and
MARTIN ROCKWELL, *Defendants.*

THIS was an action of ejectment for six seventh parts of two pieces of land in Colebrook.

The plaintiffs claimed title by descent, as heirs at law of *Daniel Sheldon,* deceased. The defendants claimed title as heirs at law of *Samuel Rockwell,* deceased, who was a mesne purchaser from the administrator of *Daniel Sheldon,* deceased, founding his right to sell on an order of the court of probate for the district of Hartford. The facts stated in the plea in bar are these : In August, 1772, *Daniel Sheldon* died intestate, seized of the demanded premises, and in November of the same year, administration on his estate was granted to *Isaac Sheldon,* since deceased. In February, 1773, *Isaac Sheldon* made and exhibited to the court of probate an inventory of the estate of *Daniel Sheldon,* which was by the court accepted, by a decree in the following words : " An inventory of the estate of Capt. *Daniel Sheldon,* late " of Hartford, deceased, was exhibited in court by *Isaac Shel-* " *don,* administrator, upon oath, in manner accustomed, (ex- " cept some out-lands to be added, and some moveables not " yet come to hand,) which inventory this court accept, and " order to be recorded, and kept on file." Of the out-lands thus excepted the demanded premises were a part. In January, 1774, *Isaac Sheldon* caused an inventory of all the estate of *Daniel Sheldon,* deceased, not before inventoried, to be made, including the lands in question. This additional inventory was exhibited to the court of probate after the death of *Isaac Sheldon,* in April, 1786, by *Joseph Woodbridge,* his

A general order of sale, by a court of probate, extends to all the property of the deceased, known to the court, at the time of making such order, though not contained in the inventory on record.

Q q

1806.

ROCKWELL
*v.*
SHELDON.

administrator. In April 1786, the commissioners, who had been appointed to receive and examine the claims of the several creditors to the estate of *Daniel Sheldon*, which had been previously represented insolvent, made their report, which was accepted by the court. In February, 1785 the court passed the following decree : " Whereas the estate of " *Daniel Sheldon*, late of Hartford, deceased, hath been repre- " sented insolvent, and it appearing from the report of com- " missioners, and from the account of expenditures, to be " insolvent, this court doth empower and direct *Isaac Sheldon*, " administrator, to sell all the estate of said deceased, both " real and personal, at public vendue, for the benefit of the " creditors, and to make return to this court to whom sold, " and for how much, with an account of charges of the sale." In December, 1785, having previously advertised, the admin- istrator, in pursuance of said order, sold the whole estate, including the demanded premises, at public vendue. This vendue title is regularly traced in the plea in bar down to the defendants. In April, 1787, *Joseph Woodbridge*, who had been previously appointed administrator on the estate of *Isaac Sheldon*, deceased, exhibited, and procured to be allow- ed his administration account against the estate of *Daniel Sheldon*, giving credit for the sale of all the estate, including the demanded premises by which the estate appeared to be insolvent to the amount of £ 24 : 2 : 7.

To this there was a demurrer ; and the Court below adjudged the plea in bar to be insufficient.

*Smith*, (of Woodbury,) and *Gould*, for the plaintiffs in error.

The case, presented upon the record, is shortly this : *D. Sheldon*, the elder, died seized of the lands in question, in the year 1772 ; and the defendants in error, (the plaintiffs below) are his heirs at law. The plaintiffs in error deduce their title, by mesne conveyances and descents, from *Isaac Sheldon*, *D. Sheldon's* administrator ; who, in the year 1786, sold the lands, under an order or decree of the court of pro-

bate, directing a sale of " *all* the estate of the deceased, both " real and personal." The decree expressly recites, that the estate appeared from the report of commissioners and the account of expenditures, to be *insolvent* : But it does not appear, upon this record, that at the time, when the decree was made, there had been any *inventory* of the lands in question, exhibited to the court of probate. It does appear, however, that, in a former inventory, they were expressly referred to, and excepted, under the description of " out-lands ;" and that they were included in a subsequent inventory, exhibited after the sale was made.——The only question, of which we are apprized, is, whether the administrator was *authorized*, by this decree, to sell the demanded premises?

The objection, arising under this question, to the title of the plaintiffs in error, is, that there does not appear to have been any *inventory* of *these* particular lands before the judge of probate, at the time, when he ordered the estate to be sold. But if the decree included the lands in controversy; the objection amounts to nothing, unless it proves, that as to *them* the decree itself was strictly *void*. If it was merely *voidable*, as being erroneous, it might, indeed, have been set aside by appeal; but cannot be impeached in any collateral action. (*a*)

But it will be contended, for the defendants in error, that the judge of probate had no authority to order a sale of the lands in controversy, because, without an inventory, he could have no *jurisdiction* of the subject; and therefore, that the decree is *void*. If, then, it can be shewn, that the inventory does not CONFER upon the courts of probate the authority, under which they order the sale of estates; or, in other words, that those courts have jurisdiction of the estates of deceased persons, without an inventory; this objection cannot prevail. The true distinction, applicable to the question, considered as a general one, is this : If the court has no

(*a*) 3 *Co* 142, *Drury's case*. 7 *Term Rep.* 458, *Holmes* v. *Walsh*. S. P. 3 *Wils.* 345, per *De Grey*, Ch. J.

jurisdiction of the subject matter; the proceedings are *coram non judice*, and void; but when a court, having jurisdiction of the subject, proceeds *inverso ordine*, or erroneously, the judgment is valid to all purposes, till reversed by due course of law. (*b*) Now the jurisdiction of the judge of probate over the estate of a person deceased, accrues and becomes complete, on the *death* of the owner. (*c*) It is impossible, that this jurisdiction should be derived from the inventory : For the granting of administration *presupposes* jurisdiction; but administration always is, and must be, granted, *before* such an inventory, as the law requires, can be exhibited, or even made. If, then, the jurisdiction of the judge of probate depended upon the previous exhibition of an inventory ; he would be excluded necessarily, and for ever, from all jurisdiction. For, by the supposition, he could have no jurisdiction, *till* an inventory had been exhibited : But no inventory could be exhibited *till* administration had been granted ; and administration could not be granted, but in virtue of a *previous* jurisdiction over the subject.

It is admitted, that the real estate of every intestate descends, immediately on his death, to his heirs at law : But their title is liable to be divested by a sale of the estate, for the payment of debts, under a decree of the court of probate : And that court has, *from the death of the intestate*, the power to decide, whether such sale is necessary, or not. The office of an inventory is merely to furnish *evidence :* But the *evidence*, upon which that question may be determined, does not confer upon the judge his authority to determine it.— And if he is not possessed of this authority immediately on the death of the intestate ; he cannot pass it *all*. To deny this, would be, in effect, to advance the strange idea, that the jurisdiction of a court of probate may be enlarged, or, as to particular subjects, *created*, by its own proceedings, or by the acts of an administrator.

(*b*) 10 *Co.* 76, *Marshalsea case.* 3 *Term Rep.* 125, *Allen* v. *Dundas. Hard.* 480, *Terry* v. *Huntington.*
(*c*) 3 *Term Rep.* 130, per *Buller, J.*

1806.

ROCKWELL
*v.*
SHELDON.

But, it will be further objected, that if the jurisdiction of the judge of probate extended to the whole estate ; still the decree does not include the lands in controversy : For that he had no evidence before him of the existence of any other estate, than that, which was contained in the first inventory ; and must, therefore, be presumed to have had no other in contemplation.

The first and most obvious answer to this objection is, that it directly contradicts the plain, unequivocal *terms* of the decree. The amount of the argument is, that, by the words, " ALL the estate" of *D. Sheldon,* is meant a certain *part* of his estate. The object of *construction* is to explain, not to destroy, the meaning of language. Besides, if it were necessary or proper to enter farther into the question, it would be material to remark, that the original inventory did not *import* to include the whole estate. Certain parts of it, both real and personal, and among them the lands in question, were expressly excepted : So that the judge, at the time of making the decree, had notice of the existence of them. If then, his intention was not to extend the decree to the property thus excepted in the first inventory ; why did he not make the same exception in the decree ? It is impossible to support the proposition, that the decree was not intended to include the whole estate. But the proper answer to the objection is, that the decree itself *precludes* the inquiry, whether the lands in question were inventoried, or not. It is virtually admitted, indeed, in the plea in bar, that they were not ; but this admission cannot render that material which would otherwise not be so.

It cannot, therefore, avail the defendants in error, unless it would have availed them to *allege* the fact, if it had not been thus admitted. But it would not have been competent for them to make such an allegation in the face of the decree. It might have been very proper and material upon an appeal ; but in a collateral action it is not so. If, then, it is asked, How could the court of probate know, what the

estate of the intestate was, or discover, whether it was insolvent, or not, without an inventory ? The plain answer is, that in *this* action, the inquiry cannot arise; for it goes directly and merely, to the *evidence*, on which the decree was founded. If a judgment at common law were pleaded in bar or in support of a subsequent action ; could that judgment be attacked by an averment, that the verdict was found upon insufficient or inadmissible evidence? The rule has long been established, and by a series of adjudications (*d*) has become unquestionable, that the judgment, sentence, or decree of any court of competent jurisdiction, till set aside by writ of error, appeal, or some other mode of review, is conclusive, in collateral actions, as to every point, which it professes to decide. The decree in question does profess to decide the fact, that the estate was insolvent ; and is, therefore, conclusive as to that fact. If so, it necessarily and conclusively implies, that the *evidence*, required by law to prove the fact, was before the court. This precise point was decided in *Moody* v. *Thurston.* (*e*) Indeed, if it were otherwise, the rule itself would be nugatory : For it would be strangely absurd to say, that the decree of a court is conclusive of the *fact*, which it professes to find, and yet leaves the parties at liberty to question the sufficiency or legality of the *evidence*, upon which the fact itself was found.

*Daggett*, for the defendants in error.

There is no doubt, that every decree of a court of probate must remain good until reversed in due course of law. We acquiesce, therefore, in the principles advanced ;—the dispute is only as to their application to this case.

(*d*) 1 *Lev.* 235, *Noel* v. *Wells.* 2 *Show.* 232, *Hugh s* v. *Cornelius.* 1 *Stra.* 481, *Rex* v. *Vincent.* *Ib.* 703, *Rex* v. *Rhodes.* 7 *Term Rep.* 681, *Geyer* v. *Aguilar.* 8 *Ib* 192, *Christie* v. *Secretan,* 2 *East* 473, *Oddy* v. *Bovill.* *Ante*, *vol.* 1, 170, *Bush* v. *Sheldon.* *Ib.* 142, *Stewart* v. *Warner.*

(*e*) 1 *Stra.* 481 ; vide *Cowp.* 315, *Rex* v. *Grundon.*

We contend, that the estate sold by the administrator, under the order of the court of probate, must have been inventoried as the estate of the deceased, or else the sale is void.

The land in question, on the death of *Daniel Sheldon*, immediately descended to his heirs at law. Neither the judge of probate, nor the administrator, had any authority over it, only to inventory and distribute it according to law. The right to direct a sale of any of the real estate accrues to the judge of probate on its being made to appear to him, that there is not a sufficiency of personal estate to satisfy the just debts ; a right to sell the whole accrues, when the estate appears to be insolvent. In this case, as it is agreed, the order of sale is founded upon insolvency ; but this insolvency could never appear, till the whole estate was before the judge of probate by the inventory. When the judge made order in this case, for the sale of *all* the real estate of the deceased, it must be intended *all* the real estate which was apparent on his records. The land in question not thus appearing, he did not order it sold. He could not ; for he had no authority so to do. It is said, however, that the object of an inventory is only to give evidence to the judge of the existence of the property ; and, in this case, he had evidence of that fact, by the expression in the first inventory, " except out-lands, &c." Now, this exception is so far from being an inventory of this land, that it is ample proof, that it was not inventoried. It could answer not a single purpose of an inventory, nor was it intended as such.

It is contended, that the judge of probate having ordered the sale of the land in question, must be presumed to have had before him an inventory. We answer, that he never did order the sale of *this* land. The argument is built upon the existence of a fact denied, and not proved.

It is again urged, that an order of sale implies, that every previous step has been taken by the judge. Let this posi-

1806.

ROCKWELL
*v.*
SHELDON.

tion be tried by the principles of law. A plaintiff, being a purchaser of land under a sale by A. B. an administrator, brings ejectment against the heir. In proof, he offers the deed of the administrator, who says, on the face of it, that he sells as administrator. Will this prove his title? The administrator acting by a special authority, must shew that authority. This is a rule of law, and of common sense.— He then must shew, first, that A. B. was duly appointed administrator. But having shewn this, still the proof is defective; for an administrator, merely on the ground of being administrator, has no power to sell the lands of the deceased. He must then go on with proof of an order of the judge of probate. But will this be sufficient? A judge of probate has no authority to order the sale of the estate of a deceased man, merely because he has committed administration thereof to A. B. Proof must then be made of insolvency, and this from the files and records of the judge. In no other way can the heir, who is in possession by the general law of the land, be divested of his estate: but insolvency can never appear without an inventory. We are then brought back to the *sine quâ non* of a sale, *viz.* an inventory.

It is further urged, in this case, that the plaintiffs in the court below should have replied to this plea, that there was no inventory. We answer, when the defendant attetmps to defeat a title in the heir, he must shew, that it has been taken from him by due course of law. He must state every thing necessary to make out his case. Now, if an inventory was necessary, an omission to allege it, makes the plea essentially bad; *de non apparentibus, et non existentibus, eadem est ratio.* Surely the Court cannot see, that a step was taken to divest the heir of this estate, unless there be proof of it. The defendants offered no allegation of such fact;—it is, therefore, to be taken, that no such fact existed.

BY THE COURT. The jurisdiction of the court of probate has been admitted in the argument. It has also been admitted, that the decrees of a court of probate having com-

petent jurisdiction, are conclusive, while they remain un-
reversed, on every question which they profess to decide.
But, it has been contended, in support of the judgment of
the court below, that, notwithstanding the universality of
the terms of the decree, and order of sale, it must be limit-
ed, by construction, to that portion of the estate, which ap-
pears, by the judge's records, to have been inventoried.—
There is, undoubtedly, one instance, in which a general
order of sale must receive a constructive limitation. That
is, in the case of a creditor, who may have neglected to have
exhibited his claim to commissioners. In the last paragraph
of the act relating to an equal distribution of insolvent es-
tates, it is enacted : " And whatsoever creditor shall not
" make out his or her claim with such commissioners, be-
" fore the full expiration of the time set and limited for that
" purpose, as aforesaid, such creditor shall for ever after be
" debarred of his or her debt ; unless he or she can shew
" or find some other or further estate of the deceased, not
" before discovered, and put into the inventory." (*f*) The
negligent creditor, to entitle himself to a recovery under this
paragraph of the statute, must not only shew, that there is
certain property belonging to the estate of the deceased,
which has not been inventoried, but he must also adduce
satisfactory proof, that it was not before discovered : or, in
other words, that the existence of it was unknown to the
judge, when he made the general order of sale. Its not
being inventoried might, indeed, be *primâ facie* evidence,
that it was not before discovered. But it is not conclusive evi-
dence. And if the administrator could shew, that the pre-
tended new discovered property was not only known to the
judge before he ordered sale, but that it had been actually
inventoried, though the inventory had not been put on re-
cord ; the case would be taken out of this provision of the
statute, and the creditor's right of recovery would be de-
feated. But whatever may be the construction of this para-
graph of the statute, it relates to creditors only, and extends
not to the heirs at law. It is, perhaps, needless to remark,

(*f*) *Stat.* 172, *edit.* 1796.

R r

that this provision of the statute furnishes a presumption, that, in the opinion of the legislature, this new discovered estate, if there had been no negligent creditor to seize upon it, would be subject to the general order of sale.

But what necessity exists for limiting the order of sale, in the case of an heir, to the property inventoried, and apparent on the records of the court ? Without such limitation will the heir be defrauded ? Certainly not ; for he is entitled to nothing, until the creditors are satisfied. If the estate inventoried, and that which is newly discovered, but not inventoried, fall short of satisfying the demands of creditors, no injustice is done to the heir. If, on the other hand, a sale of the whole should be more than sufficient for that purpose, the heir will be entitled to receive the balance. But will no injustice be done to creditors, if the limitation contended for should be adopted ? A large portion of an insolvent estate may escape the diligent search of the administrator, until after the order of sale ; (for the estates of insolvents are generally more involved than others) and this must go to the heir, to the injury of creditors, since the whole would be insufficient to satisfy their demands. Or will it be said, that the administrator may add the new discovered estate to the first inventory, and cover it by a new order of sale ? As well might you permit him to sell it under the first order, the terms of which are sufficiently general to cover the whole.

But this train of reasoning leads to an inference, which it is by no means necessary, in this case, to adopt. Whether or not, a general order of sale includes property unknown to the judge at the time of making the order, is a question not to be involved in the determination of the cause before the Court. For, it is apparent on the record, that the existence of the demanded premises, as a part of the estate of *Daniel Sheldon*, was known to the judge, long before the decree of insolvency, and order of sale. This fact was communicated to the court of probate, by the administrator, when he ex-

hibited the first inventory ; and the information was recognized by the judge, in his order for accepting and recording the inventory. The demanded premises, therefore, constituting a part of the estate of *Daniel Sheldon*, were within the knowledge of the judge of probate, and must be supposed to have been in his contemplation, when he made the order of sale. If it were requisite, as undoubtedly it was, for the judge to have ascertained the value of this part of the estate, before he pronounced the decree of insolvency ; then we must presume this to have been done, whether it appear on his records or not ; for, otherwise, we shall impeach the decree. But this fact is not left to presumption only. For it is expressly averred in the plea in bar, that, on the 5th of January, 1774, long before the decree of insolvency, and order of sale, the administrator caused a true and perfect inventory of all the estate of *Daniel Sheldon*, which had not been before inventoried, to be made, and that the demanded premises were included. To give force and validity to the decree, we must presume, that the judge had this before him, and took into his calculation the value of this part of the estate, when he decreed it to be insolvent. It is said, however, that this second inventory was not accepted, by the judge, and ordered to be recorded. It may be answered, that the averment is inadmissible ; because, if such acceptance were requisite, the averment impeaches a decree of a court of probate having competent jurisdiction ; and such decree cannot be impeached in a collateral action. On the contrary, if such acceptance and order of record, were necessary to give validity to the decree, then they must be presumed. But, it may well be doubted whether such acceptance be necessary for the purpose, which we are now considering. The inventory of an estate represented insolvent is required, by the judge, as one article of evidence, to enable him to determine correctly, whether the estate be solvent, or insolvent. Now, does not an inventory, regularly taken by two or three indifferent freeholders under oath, furnish the same degree of evidence to the judge of probate, before, as after, acceptance ? Is it not inconceivable,

that an official act of his own, though it may be indispensibly necessary to give the inventory the force of evidence before other courts, should increase the impression intended to be made on his mind, who has the power of acceptance, and rejection ?

But, to conclude, *Daniel Sheldon* died in 1772 ; the same year, the administrator exhibited a partial inventory of his estate, notifying the judge of the existence of the demanded premises, not included in the inventory ; of which notice there is record evidence.   In 1774, he took an additional inventory including these lands.  In 1785, eleven years after, the judge decreed the estate to be insolvent, and ordered the administrator to sell the whole of the estate of *Daniel Sheldon*, deceased, both real, and personal, at public vendue.   And after all this we are urged, not by a creditor who neglected to exhibit his demand to the commissioners, but by the heirs at law, to pronounce the sale made under this order, void, not because there was sufficient estate to satisfy the demands of the creditors without it, for this was not the fact ; not because this estate was not within the knowledge of the judge of probate, and therefore could not be presumed to have been in his contemplation, when he made the order ; but because the inventory of this property did not, at that time, appear of record.

The Court are of opinion, that the limitation of the order of sale, contended for by the plaintiffs below, is inadmissible ; and that the order must be taken to extend, at least, to all the estate of *Daniel Sheldon*, at that time known to the judge ; and that this includes the demanded premises.   Consequently, the plea in bar is sufficient, and ought to have been so adjudged by the Court below.   The judgment of the Superior Court must be reversed.