## GRISWOLD *against* BIGELOW.

The real estate of a person deceased is a fund for the payment of debts, in case of a deficiency of personal assets; and, in the absence of gross neglect, or unreasonable delay, on the part of the creditor, it remains subject to a lien for this purpose, after distribution and alienation to a *bona fide* purchaser.

The recovery of a claim against the estate of a deceased person, which originates after, or, from its nature, cannot be ascertained within, the time limited by the court of probate for the exhibition of claims, is not barred, by the non-exhibition of it within such time.

Therefore, where *A.*, in 1775, conveyed land to *B.*. with covenants of seisin and warranty, and, in 1789, died, leaving real and personal estate; the debts then outstanding were paid from the personal estate; the real estate was distributed to the heirs and devisees; and the estate was settled in the usual manner: more than thirty years afterwards, *viz.* in 1820, *C.* evicted *B.*, in due course of law, from the land conveyed to him by *A.*, in 1775; an administrator *de bonis non* on *A.*'s estate being appointed, *B.* exhibited his claim against the estate for a breach of *A.*'s covenant of warranty, which was allowed; the personal assets being exhausted, the court of probate granted to the administrator an order for the sale of land, to pay such claim; in pursuance of which, he sold a part of the land distributed to the heirs and devisees, which had been conveyed to, and was in the possession of, a *bona fide* purchaser; it was held, that such land was subject to a lien, which the distribution, the limitation of claims, the alienation and the lapse of time, did not extinguish; and that the sale was, therefore, legal.

A deed by an administrator, under a probate order of sale for the payment of debts, must be adapted to convey the estate, which is the subject matter of the power.

In such case, the administrator has himself no interest in the land to be conveyed.

Therefore, where an administrator, reciting his power under an order of probate, naming himself as administrator, and signing with that addition to his name, executed a quit-claim deed, releasing his right and title to the premises, described by metes and bounds, as being the same of which the intestate was seised and possessed at his decease; it was held, that such deed was inoperative.

This was an action of ejectment for land in *East-Haddam,* tried at *Middletown, February* term, 1826, before *Bristol,* J.

The plaintiff claimed title to the demanded premises, by virtue of a deed of conveyance from *Charles Griswold,* Esq. administrator with the will annexed, on the estate of Gen. *Dyar Throop,* not administered upon.

On the 17th of *May,* 1775, Gen. *Throop* and *Phebe,* his wife, executed to *Matthew Griswold* a deed of conveyance, with covenants of seisin and warranty, of two tracts of land in *Lyme.* In the year 1789, Gen. *Throop* died, leaving an ample estate, which was soon afterwards administered upon, by his widow, whom he had appointed executrix. After the expiration of the time limited for the exhibition of claims, the estate was settled in the usual manner. The debts then outstanding against the estate, were small, and were paid out of the personal property of the deceased. The real estate, of which the demanded premises were a part, was duly distributed, under the will, to Mrs. *Throop* for life, and the remainder to the testator's brothers and sisters. This distribution was made more than

*Middlesex,*
*July,*
*1826.*

*Griswold*
*v.*
*Bigelow.*

thirty-four years ago. From these devisees, by regular conveyances, through *bona fide* purchasers, the defendant claimed title. In 1819, Mrs. *Throop* died, without issue. In *February,* 1820, *Thomas Mather* and others, as heirs at law of Mrs. *Throop,* claimed title to the land in *Lyme,* sold by Gen. *Throop* and his wife to *Matthew Griswold*; and thereupon commenced suits against the occupants under *Matthew Griswold,* and evicted them, in due course of law. In *September,* 1821, the court of probate granted administration to *Charles Griswold,* Esq. on the estate of Gen. *Throop* not administered upon. An inventory was then taken, including the demanded premises; a time was limited for the exhibition of claims; and the heirs of *Matthew Griswold* presented to the administrator claims against Gen. *Throop's* estate for a breach of the covenants of warranty contained in his deed, amounting to 1574 dollars, 53 cents. These claims were allowed, by the court of probate; and, there being no personal estate for the payment of debts, an order for the sale of land, to the amount of such claims and the expenses of administration and sale, was granted to the administrator; in pursuance of which, he, on the 1st of *November,* 1822, executed to the plaintiff a deed of the demanded premises, under which he now claims title.

The deed set forth the authority of the grantor in these words: "*Charles Griswold,* administrator of the estate of *Dyar Throop,* late of *East-Haddam,* deceased, being specially authorized and empowered, by the court of probate for the district of *East-Haddam,* to sell so much of the real estate of said *Throop* as will raise the sum of 1604 dollars, 46 cents, to pay the debts against said estate, the expenses of administration and incident charges of sale." The grantor then proceeded as follows: "For divers good causes and considerations me thereunto moving, especially for the sum of 1240 dollars, received to my full satisfaction of *Matthew Griswold,* jun. of *Lyme,* in the county of *New-London,* I have remised, released and forever quitclaimed, and do, by these presents, for myself, my heirs, executors, &c. justly and absolutely remise, release and forever quitclaim unto the said *Matthew Griswold,* jun., and to his heirs and assigns forever, all such right or title, as I, the said *Charles Griswold,* administrator aforesaid, have or ought to have in and to a certain tract or parcel of land: [describing the demanded premises, by metes and bounds,] said premises are the same formerly occupied, by said *Dyar Throop,* while in full life, and

of which he was seised and possessed at his decease. *To have and to hold* the above described premises unto the said *Matthew Griswold* jun. his heirs and assigns, &c. so that neither I, the said *Charles*, nor any other person in my name and behalf, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they, and every of them, shall, by these presents, be excluded and forever barred. In witness whereof, I have hereunto set my hand and seal, this 1st day of *November, Anno Domini*, 1822.

*Charles Griswold*, Administrator." [L. S.]

The plaintiff insisted, that said claims were legal and valid; and that the real estate of Gen. *Throop* was by law liable to be sold, in the manner it was, to pay such claims; and that he was, therefore, entitled to recover the demanded premises. But the judge instructed the jury, that under the circumstances of this case, the real estate, of which Gen. *Throop* died seised and possessed, could not by law be sold under an order of the court of probate for the payment of said claims; and that the plaintiff acquired no title under his deed. The jury thereupon returned a verdict for the defendant; and the plaintiff moved for a new trial for a misdirection.

*T. S. Williams* and *C. Griswold*, in support of the motion, contended, 1. That the real estate of which a person dies seised, is subject to a lien for all his just debts, in whose hands soever it may be found; and that the lien, in this case, was not lost, either by the settlement of the estate, or by the alienation of the land to a *bona fide* purchaser. *Brattle* v. *Gustin*, 1 *Root* 425. *Booth* v. *Starr* & al. 5 *Day* 419. *Gore* v. *Brazier*, 3 *Mass. Rep.* 523. 542. *Graff* v *Smith's* admrs. 1 *Dall.* 481. *Ricard* v. *Williams* & al. 7 *Wheat.* 59. In the case last cited, the creditor lost his lien, *by neglect*; but the general principle is recognized. Here, there is no pretence of any neglect; as the claim, from the nature of it, could not have been presented before.

2. That the deed under which the plaintiff claims title, was effectual to convey the title. The grantor recites his authority in the deed; describes the premises as "the same of which said *Dyar Throop* was seised and possessed at his death;" and acts throughout the deed *as administrator*, and executes it in that capacity. The court will give this instrument a liberal construction to carry into effect the intention of the parties. 2 *Bla. Comm.* 379. 1 *Swift's Dig.* 222. & seq.

*Sherman* and *Hungerford,* contra, contended, 1. That the land in question, after distribution and alienation to a *bona fide* purchaser, could not be taken and sold, under a decree of probate, for the payment of a claim against Gen. *Throop's* estate. First, it is clear, that this could not be done, by virtue of any principle of the common law. Secondly, the only statute provisions altering the common law, are contained in *tit.* 60. *c.* 1. *s.* 22, 23. (ed. 1808.) But these provisions, taken together, authorize a sale of the real estate only for the payment of debts exhibited within the time limited by the court of probate. Thirdly, the bond given to refund, in case debts afterwards appear, (*sect.* 17.) furnishes an adequate security to the creditor, and renders a lien on the land unnecessary. It is, obviously, a substitute for the property. Fourthly, there is no provision in favour of the heir whose land is taken after distribution, to compel a contribution from the other heirs. Fifthly, if such lien be admitted, in any case, it must have a reasonable limitation ; for otherwise the real estate of a deceased debtor, could never be safely transferred. If it be not perpetual, it must terminate in less than thirty-four years ; and an order of sale after that period, will be considered as improvidently granted. Ex parte *Allen,* 15 *Mass. Rep.* 58. 61. *Thompson* v. *Brown,* 16 *Mass. Rep.* 172. 180. Sixthly, the distribution, when completed and returned, and accepted by the court of probate, becomes *res adjudicata ;* and our law has made no provision for a second distribution.

2. That at any rate, there could be no recovery under this deed. The grantor has attempted to convey *his* right and title ; and *he* had none. His acting *as administrator* makes no difference ; for the title to the land of the deceased is not in the administrator. He had only a power. To make an effectual deed, there must be not only an intent, but apt words. *Sic voluit, sed non dixit,* is applicable to the deed in question. No title passed.

HOSMER, Ch. J. The liability of real estate, by the common law, to the debts of the creditor, is so entirely variant from the statute regulations and established law on the same subject here, as to be utterly irrelevant. Simple contract debts, by the common law, are not recoverable in any shape, out of the intestate's or testator's land ; and it is made responsible only where the ancestor binds himself and his heirs, by specialty

*Middlesex,*
July,
1826.

Griswold

*v.*
Bigelow

And even then, before the act of *Wm. & Mary, cap.* 14., which is of no obligation here, this security was little more than fallacious. If before action brought, the heir had aliened the assets, the obligee was without remedy ; and before the statute, if the ancestor had devised away the lands, a creditor had no redress, either against the heir or devisee.

In *Connecticut,* "our statute," said Ch. J. *Mitchell,* in *Starr* v. *Booth, 5 Day,* 286 , "has created a joint fund of the real and personal estate, and made both assets in the hands of the administrator, and requires a bond from him faithfully to administer, not only the goods, chattels and credits, like the statute 22 & 23 *Car.* 2., but the *estate* also of the intestate." The real estate, the executor or administrator is bound to inventory, and cause to be appraised ; and if the debts and charges exceed the value of the personal estate, the probate court is authorised to direct so much of the realty to be sold, as is sufficient to make payment. And in the event of insolvency, the whole estate, both real and personal, is, by law, to be disposed of, and the avails to be applied in satisfaction of debts. I shall not recur to the various statutes on this subject, carrying the system back, not merely beyond the memory of man, but almost coeval with the first records of our laws. It is a point indisputably and familiarly known, both by the ignorant and learned, that the real estate of a person deceased, is a fund for the payment of debts, on deficiency of personal assets ; and equally so, after it descends to the heirs; or is alienated to the devisee, subject to this lien.

The estate of *Dyar Throop,* by his executrix, was proceeded with, in the usual manner ; a time was limited for the exhibition of claims ; and the debts having been paid, without a total exhaustion of the personal estate, the remaining property was duly distributed. By this last act of administration, the executrix terminated her duty, and exonerated herself of her trust, in relation to all existing claims. No bond was taken by her of the devisees, to refund, if any debts should appear in future ; nor is it usual, since the legal authority given to the court of probate to limit the exhibition of demands. A claim like the present, arising out of the breach of a covenant of warranty, long subsequent to the above distribution, both contingent and unknown, it is reasonable to suppose, would not have been anticipated.

It is unquestionably clear, that the limitation of claims, and

*Middlesex,*
July,
1826.

Griswold
*v.*
Bigelow.

the non-exhibition of the one in question, constitute no bar against it. Where a claim originates after the time limited, the creditor is not precluded, as the law operates only on existing demands, capable of exhibition. It is the negligent creditor only whose debt is barred. *Backus* v. *Cleaveland, Kirby*, 36. *Allen* v. *Gleason* & al. 4 *Day*, 476.

That the court of probate had jurisdiction over the appointment of Mr. *Griswold*, as administrator of the estate administered, has been impliedly admitted throughout the defendant's argument. There is no doubt, that the probate court has cognizance of such appointments; and the only question that can arise, must relate to the legal exercise of jurisdiction in the particular case. The decrees of a court of competent jurisdiction, are conclusive, while they remain unreversed, on every question, which they profess to decide. *Rockwell* v. *Sheldon*, 2 *Day*, 305. They can never be questioned collaterally, but *ex directo* only. The same observations are equally applicable to the allowance of the claim by the court of probate, and to the order of sale. It was the proper course of the devisees and other persons interested, if desirous of reviewing these determinations, to have appealed from the appointment of the administrator, and the order of sale, and indeed from any other exceptionable decree of probate; and in my opinion, this was the only legal mode of reviewing any of those determinations. From this it results, so far as this Court is authorized to decide, that an administrator was duly appointed; the claim was legally allowed; and a lawful order of sale was made; and this, for aught I can discern, puts an end to the controverted enquiry. For, I think it indisputably clear, that so long as the court of probate is authorized to proceed in its legitimate functions, and direct the sale of estate for the payment of debts, the lien upon the land of the deceased must continue. These propositions are correlatives, and must always co-exist.

If, however, the enquiry be competent, I do not perceive, that any fact has taken place, which terminates the lien on the estate of the deceased.

Perhaps, the most perspicuous mode of discussing this subject, will be, by distinctly replying to the various considerations urged by the counsel of the defendant, to show that the lien was extinguished.

Before I enter on the objections, I will dispose of one suggestion of a general nature, made in the course of the argu-

*Middlesex,*
July,
1826.

Griswold
*v.*
Bigelow.

ment. It was supposed, that the order of sale, by the court of probate, is *discretionary ;* and to this end were cited two determinations in a neighbouring state. Ex parte *Allen,* 15 *Mass. Rep.* 58. *Thompson* v. *Brown* & al. 16 *Mass. Rep.* 172.

These decisions, I think, are misconceived. It never can be admitted, that a probate judge, on principles of unlimited discretion, may refuse to exercise this branch of his jurisdiction. This would be to sanction that discretion, which Lord *Camden,* in *Doe* d. *Hindson* v. *Kersey,* denominates *" the law of tyrants."* 1 *Day,* 81. in note. The learned court meant nothing more, than that the jurisdiction must be exercised discreetly but legally, according to the observation of Sir *Edward Coke,* that legal discretion is, *discernere per leges quid sit justum.* But if the discretion were absolute, the proceedings of the court of probate must be irreversible; as no error is predicable of a decision made on this unlimited principle. *White* v. *Trinity Church,* 5 *Conn. Rep.* 187. The argument recoils on the defendant.

It has been objected, that the *lapse of time* since the distribution, has been such as to extinguish the lien on the land ; especially, in the hands of a purchaser. A perpetual lien upon the lands of the deceased for the benefit of creditors, would be a public inconvenience, and ought not to be sanctioned. Still it ought to continue a reasonable time, and not be defeated, except by the neglect or *laches* of the creditor ; and hence, gross neglect or unreasonable delay, should be held a waiver or extinguishment of it, in all cases ; and more especially, where the property has been disposed of for a valuable consideration. This is the opinion of two eminent jurists. *Gore* v. *Brazier,* 3 *Mass. Rep.* 542. *Ricard* v. *Williams,* 7 *Wheat,* 116. And in it I certainly acquiesce, founded as it is on principles of justice and analogy. It is unnecessary to lay down a rule on the subject, defining, by certain limits, what shall be considered a reasonable time, as the case before us would not fall within any rational principle that could be adopted. The creditor's demand originated in the year 1820; and in 1821, administration, with a view to take advantage of the lien existing on the land of the deceased testator, was taken out. Here was nothing savouring of *laches* or neglect.

It was next contended, that the lien was extinguished, by the *distribution.* It is clear, that a distribution, by its own proper force, has no such effect ; nor has any case been cited to es-

*Middlesex,*
July,
1826.

Griswold
*v.*
Bigelow.

tablish the position. By a distribution, the title is not trans-ferred, nor in general, the rights of the parties changed. It merely divides or aparts the property to be held as it was, un-der the right already existing. The title to personal estate rests on a different ground ; and is not embraced by this re-mark. Such property vests in the executor, and is conveyed by the distribution to the heirs. *Roorbach* v. *Lord,* 4 *Conn. Rep.* 347. The proposition of the defendant must be supported, if sustainable, on a correct construction of the statute relating to the subject, and the nature of the case. The argument has pro-ceeded on the ground, that a distribution is the final consum-mation, not only of the administrator's powers, but emphatical-ly and necessarily a complete settlement of the estate. I will examine these positions ; and in the first place, attend to a con-struction of the statute. It must be admitted, that very gener-ally, the distribution of an estate, is the last act of administration, and closes the concern : the question is, whether by law, it does this universally. The statute (*sec.* 29.) is not explicit on this subject. It merely provides, that there shall be a distri-bution of the estate ; but whether this indispensably terminates the settlement of it, in all events, must depend on the nature of the case. Previous to distribution, the estate is to be invento-ried ; the debts are to be paid ; land, if necessary, is to be sold for this purpose ; and all the apparent duties of the executor or administrator having been discharged, and an account there-of rendered to the court of probate, nothing remains, but that the estate should be divided, and go into the hands of the heirs or devisees. This would seem, at first blush, to have complete-ly effected what the administration was designed to effect ; that is, to relieve the estate of the deceased from every burden, that the persons having right to enjoy the surplus, might enter on and possess it, without future interruption. This, however, is the surface of the transaction only. Debts suspended on con-tingencies, and unknown to the executor or administrator, may arise ; and what reason can be assigned, that these demands should meet with diminished security ? The personal estate, perhaps, is exhausted ; and the bond of the executor or ad-ministrator, if not performed, as it was held to be in *Booth* v. *Starr,* 5 *Day,* 275., perhaps is unavailing, through the insolven-cy of the obligors. On what just and reasonable principle, in-dependent of positive law, (and here there is none,) shall the class of creditors last referred to, be deprived of their lien on

the real estate, which has been aparted or divided? The lien is a legal right, by law provided for the benefit of the creditors, lest their just debts should not be paid; and on what ground is it, that this right should be deemed extinguished, while there remains the same reason for its existence, as there ever did? It would be thought to be a strange reason for the non-payment of a promissory note, that it had been assigned; and equally strange is it, that a right, neither released, nor lost by neglect, should be annulled, because the property burdened with a lien, is no longer owned by the heirs jointly, but is aparted in separate divisions among them. The laws of *Pennsylvania* and *Massachusetts*, on the subject in question, are similar to ours, and vary alone in the mode of their execution. In *Graff* v. *Smith's* admrs. 1 *Dall.* 481. after the distribution of the estate of a person deceased, the lien in favour of creditors was determined to exist; and even the supposed extinguishment of it, by the distribution, was not made a question. And in *Gore* v. *Brazier*, 3 *Mass. Rep.* 523. Ch. J. *Parsons* lays down the doctrine, that although the lien in question is not intended to be perpetual, it should continue a reasonable time, and not be defeated, save by the laches of the creditor. So, in *Ricard* v. *Williams*, 7 *Wheat.* 114. it was said, by *Story*, J., that so long as the administration legally subsists, or may legally be granted, this power over the land may be exercised, if the land remain in the possession of the heirs; and that it is not defeated, simply by an alienation.

It is an incorrect position, that the whole distribution of an estate must, if the lien continue, be rendered void, by a single debt. The heir, whose land is sold, by the executor or administrator, may have contribution from the other heirs, all of them being *in equali jure. Harbert's* case, 3 *Rep.* 13. *Graff* v. *Smith's* admrs. 1 *Dall.* 484. *Stat. p.* 306. *sec.* 28.

The estate of a deceased person usually is considered as settled, at the time of the distribution; and generally speaking, this consideration is true; and so a descent cast usually falls on the permanent heir; but these appearances may be annulled, by subsequent facts, by unsettled debts, or an heir that will take the place of the former.

I have no doubt that our laws, either expressly, or by construction, do not annul the lien of debts on the estate of deceased persons, by reason of its distribution; and that this essential

*Middlesex,*
July,
1826.

Griswold
*v.*
Bigelow.

right is alone defeated, by a release, or the laches of the creditor.

That an *alienation* of land by the heir or devisee, has not the effect of discharging the lien, has repeatedly been determined. *Gore* v. *Brazier,* 3 *Mass. Rep.* 523. *Wyman* v. *Brigden,* 4 *Mass. Rep.* 150 *Graff* v. *Smith's* admr. 1 *Dall.* 481. *Ricard* v. *Williams,* 7 *Wheat.* 59. If it were otherwise, it would be no fund at all ; for the devisee or heir, knowing the necessity of alienation to extinguish the lien, would, in every instance where he apprehended debts beyond the amount of personal property, immediately sell the estate, and thereby entirely defeat the intent of the legislature in making it a fund for the payment of debts. Instead of being necessarily liable, at all events, to the payment of debts, on the exhaustion of the personal estate, in whatever hands it might be, it would be altogether precarious, and defeasible always, by the person who had an interest to defeat it. Here there is no inconvenience. The alienee purchases with open eyes, knowing the condition of the property ; and can protect himself by covenants, if he is apprehensive of the existing lien ; and the heir or devisee is under no restraint of alienation, except from that which justly arises ; the burden to which his title is legally subjected.

It is said, that the *bond* given at the distribution of the estate, which always may be exacted, (*sect.* 33.) to refund to the executor or administrator, if debts should afterwards be made to appear, discharges the lands of the deceased from the lien imposed by statute. In *Gore* v. *Brazier,* 3 *Mass. Rep.* 523., it was adjudged, that such bond was merely cumulative. This opinion is most manifestly just. The law declares nothing explicitly on this subject ; and hence we must judge from the nature and consequence of the act. The creditors, without fault or neglect, are not placed, upon the supposition advanced, in equal equity with those who came in before distribution ; but a disparity, without the slightest reason, is made between them. Some time may elapse before their contingent claims exist ; the bond may have become worthless, by reason of the insolvency of the bondsmen ; and thus their just debts may be defeated. A construction so inequitable ought not to be admitted, the law being silent on this subject. There is no injustice in considering, and it is the lesser convenience to consider, the lien as existing, until its object is accomplished.

I am, therefore, of opinion, that the judgment of the court

below, that the estate of *Dyar Throop* could not by law be sold, under an order of probate, for the payment of the debt exhibited, was incorrect.

Whether by virtue of the administrator's deed, the plaintiff acquired a title, is a question that remains to be considered.

In this state, a deed of release is not viewed as secondary or derivative, but as primary and original; and is a common mode of conveyance for the transfer of land, without covenant of seisin or warranty. But such deed is entirely unadapted to the execution of the power confided to the administrator. He had no interest in the lands of the deceased; and yet all that he has done, is to release such interest. The instrument intended by law must be such as is proper for the disposition of that which is the subject matter of the power. As it can have no operation, unless by virtue of the power, the law requires a resort to that power, for the purpose of giving validity to the instrument. 4 *Cruise's Dig.* 238, 9. It is usual for the administrator to recite the facts, showing that he is empowered to sell, although this is not indispensably necessary; (*Hob.* 160.) and to grant the land by virtue of the power, with such covenants as he thinks proper to assume; as that the testator or intestate died seised; that he was duly empowered; and that he has in all things observed the rules and directions of the law, in the sale.

The deed of the administrator is void and inoperative; and the plaintiff, by reason of it, acquired no title.

On this sole ground, I am of opinion that no new trial be granted.

BRAINARD, J. was of the same opinion.

PETERS, J. concurred in the opinion, that the deed was void; and, on that ground, would not grant a new trial. On the other point he had some doubts; and as it was not necessary to decide it, in order to dispose of the case, he declined the expression of any opinion upon it.

LANMAN, J. being related to one of the parties, and DAGGETT, J. having been of counsel in the cause, gave no opinion.

New trial not to be granted.