STEPHEN BOOTH *against* FRIEND STARR and PHILO BOOTH, administrators of *John Booth*, deceased.

### IN ERROR.

THIS was an action of *covenant broken.* It was alleged in the declaration, that on the 13th day of *June*, 1795, *John Booth*, then in full life, by his deed, duly executed and delivered by him and *Lydia Booth*, his wife, for the consideration of 600*l.* lawful money of the state of *New-York*, conveyed to the plaintiff, in fee-simple, a certain tract of land in the city of *Hudson ;* and that the grantor, in and by the deed, for himself, his heirs, executors and administrators, covenanted with the plaintiff, his heirs and assigns, that he was well seised of the premises, as a good and indefeasible estate in fee-simple, and that he had good right to grant, sell and convey the same to the plaintiff; and that the plaintiff should, from time to time, and at all times forever thereafter, peaceably and quietly, have, hold, enjoy and possess the same, with the appurtenances ; and that he would warrant and defend the same to the plaintiff, his heirs and assigns, forever, against the lawful claims of all persons whatsoever. It was also alleged, that the plaintiff, immediately, entered into the granted premises, and became possessed thereof. It was then averred, that the grantor, at the time of making and executing the deed, was not lawfully seised of the premises, as a good and indefeasible estate, in fee-simple, and that he never had any right, title or interest in the same ; that he had no right to sell and convey the same, and that the plaintiff, his heirs and assigns, could not hold, possess and enjoy the same according to the covenants in the deed ; and that neither the grantor during his life, nor the defendants since his death, had warranted and defended the premises to the plaintiff. It was also averred, that at the time of making and executing the deed, and for six years before, one *Lucy Starr*, by priority of right, was the lawful owner of the granted premises, in fee ; and that on or about the 1st day of

*A.* conveyed a parcel of land to *B.*, by deed, with covenants of warranty and seisin, for the performance of which, he bound himself, his heirs, executors and administrators. *A.* died, and his estate was represented insolvent; but it turned out to be solvent, and the *residuum* was distributed and paid over to the heir at law. After the final settlement and distribution of the estate, *B.* was evicted from the land. In an action for breach of covenant, by *B.*, against the administrators of *A.*, it was held, that the administrators were not liable.

*March,* 1810, after the decease of *John Booth,* the grantor, she, together with her husband, *Eli Starr,* by virtue of their elder title to the granted premises, entered into and upon the same, took possession thereof, and evicted the plaintiff; and that they continued to hold the same, by priority of right, in fee. Notice of the preceding facts, and of the plaintiff's claim, was averred to have been given to the defendants, on the first day of *April,* 1810.

The defendants pleaded in bar of the action; and in their plea alleged, that soon after their appointment as administrators of the estate of *John Booth, viz.* on the 2d day of *April,* 1806, they represented the estate insolvent to the court of probate for the district of *New-Haven,* and that such court, at the same time, appointed commissioners to receive, examine and allow all claims and demands of creditors against the estate; that the court of probate limited the time for the exhibition of claims, to the period of six months, from the 2d day of *April,* 1806; that on the 8th day of *April,* 1806, the commissioners gave due notice of their appointment, the limitation of the time for the exhibition of claims, and of the times and places of their meetings for the purpose of receiving and adjusting all claims against the estate; that they met at such times and places, and on the 12th day of *December,* 1806, reported to the court, a list of all the debts and claims, which were exhibited to them, and allowed against the estate of the intestate; which report was accepted and approved by the court of probate; that it did not appear from the report, that any thing was found by the commissioners, to be due to the plaintiff from the estate of the deceased; that prior to the 26th day of *August,* 1808, the commissioners exhibited to the court of probate, their administration account, which was accepted and allowed; and that after the payment of all debts and claims against the estate, expenses of administration, &c. the balance remaining in the hands of the defendants, as administrators, was, prior to the 26th day of *August,* 1808, and prior to any notice of the plaintiff's claim, by order of the court of probate, distributed and paid over into the hands of *Friend Starr,* one of the defendants, guardian of

*Harriet Booth*, the daughter and only heir of *John Booth*, deceased.

To this plea, there was a demurrer, and joinder in demurrer. The Superior Court adjudged the plea sufficient: And to reverse this judgment the present writ of error was brought.

*N. Smith* and *Hatch*, for the plaintiff.

I. At the circuit, it was claimed, that the declaration was insufficient, because it does not show an eviction of the plaintiff, by legal process; but this point seems now to be abandoned. Indeed, it cannot be defended on the principles of good pleading, or by the authority of the books. *Foster* v. *Pierson*, 4 *Term Rep.* 617. *Roll* v. *Osborn, Hob. Rep.* 26. *Norman* v. *Foster*, 1 *Mod. Rep.* 101. *Wootton* v. *Hele*, 1 *Mod. Rep.* 294.

II. It was further insisted, that the administrators could not be liable, because the breach of covenant happened after the death of the covenantor. This objection is both arbitrary and novel. If the administrators are not liable, it must be either, 1. because they were not originally bound, by the covenants in the deed; or 2. because they have been discharged, by some matter since the death of the intestate. Neither of the suppositions have any foundation. *'Esp. Dig.* 295, 296. *Gould's* edit. vol. 1. *p.* 151, 152. *Pow. Con.* 128. 1 *Bac. Abr.* 533. 2 *Bac. Abr.* 443. 1 *Chit. Plead.* 37, 38. The following cases tend to shew, that it is immaterial whether the breach happens before or after the death of the covenantor. The administrator has been considered as bound in either case. *Hurd* v. *Fletcher, Doug. Rep.* 43. *Bulkley* v. *Pirk, Salk. Rep.* 317. *Collins* v. *Thoroughgood, Hob. Rep.* 188. *'Esp. Dig.* 296. *Gould's* edit. vol. 1. *p.* 154, 155. *Harrison's* ex. v. *Sampson*, 2 *Wash. Rep.* 155. 1 *Selw.* N. P. 505, 506. *Hyde* v. Dean of *Windsor, Cro. Eliz.* 552.

III. It was objected, that this claim was barred by the limitation, and proceedings of the court of probate. This depends upon the construction of our statute. 1 *Stat. Conn.*

tit. 61. c. 1.   The plaintiff contends, that his claim is not barred.   He insists, that it stands upon the same ground, as it would if there were no other claims upon the estate, and no other fund, except the surplus, existed.   It is not necessary that he should impeach the validity of the payments made under the report of the commissioners, or any other part of the proceedings in the court of probate.   The construction proposed by the defendants, will exclude every claim which is not a subsisting one, and is not capable of being proved under the commission.   The construction of the plaintiff saves all such claims, and give creditors a remedy, as far as may be, without defeating the operations of the principle of average.   Against the interpretation of the defendants, many reasons may be suggested: 1. The terms of the statute do not authorize it.   2. The statute provides, that such as are entitled to a distributary share, shall give bond with sureties, to the administrator, to refund in case " debts afterwards be made to appear."   3. In the case of a solvent estate, the statute authorises a similar limitation.   We contend, that the construction in both cases, so far as the present question is concerned, should be the same.   If an estate be solvent, can the administrator demand of the heir to refund, only in case of a claim from another state?   The decisions have well settled the effect of the limitation, in such a case. *Backus* v. *Cleaveland, Kirby's Rep.* 36.   *Adams* v. *Cleaveland, Kirby's Rep.* 38.   The case of *Pendleton* v. *Phelps,* 4 *Day's Rep.* 476. settles the same rule.   4. The construction contended for by the defendants is manifestly unjust.   5. The decisions under the *English* statutes of bankruptcy, are in point, so far as they go to except claims, which cannot be proved under a commission.   *Hockly* v. *Merry,* 2 *Stra. Rep.* 1043.   *Goddard* v. *Vanderheyden,* 3 *Wils. Rep.* 262.   *Cooper's B. L.* 225.

But it is said, that on the supposition, that certain claims are not within the limitation, this claim, at any rate, is not one of them.   The true question is, whether our claim could have been made out before the commissioners?   Suppose

there had been no covenant of seisin, and we had gone before the commissioners, could we have prevailed? Until after the expiration of the time limited for the exhibition of claims, there had been no eviction, and of course, no breach of the covenant of warranty. Until after the eviction, the plaintiff had no claim upon this covenant; and as to this, was not a creditor, in any sense, unless it be true, that for every covenant which is liable to be broken, the party may be allowed by the commissioners. In what situation would such a doctrine place an administrator?

IV. It is further contended, on the other side, that at all events, there is no remedy at law against the administrator. They would turn us over to the heir; yet, it does not appear, that the intestate died seised of any estate of inheritance, of any value: And it ought to be observed, that every other objection which has been urged against the plaintiff's right of recovery, bears with equal force, as to any claim upon the heir. The heir is liable upon the covenant of his ancestor, only in case property descends to him, and he be named in the deed; but the administrator is bound, whether named or not, to the extent of the assets in his hands.

V. But we are further told, that we must follow the assets, and make application to a court of chancery. Are we bound to do this? Such a proceeding is authorised, for the protection of the creditor; but it is not the privilege of the administrator, to turn the creditor over to a court of chancery, *ad libitum*. *Anon.* 2 *Ves. Rep.* 192. *Noel* v. *Robinson*, 1 *Vern. Rep.* 94. *Newman* v. *Barton*, 2 *Vern. Rep.* 205. *Noel* v. *Robinson*, 2 *Ventr. Rep.* 358. Besides, this objection applies with the same force, to actions against executors, &c. where the estate is solvent.

VI. But again, it is said, that we have no remedy at law, nor in chancery, either against the heir or administrator; but must go back to probate, and procure a new commission. To this many answers may be given.

1. Such a proceeding, in a case like the present, is not authorised by the statute.

2. It would not remove the difficulties, which are supposed to embarrass the remedy now adopted ; as it would call back the funds into the hands of the administrator, from the legatee and other creditors.

3. The object of an equal distribution of the estate of the intestate, would be frustrated. It is inferred, then, that the safest course would be, to leave claims like the present, to stand on the same ground as in *England*, except where other parts of our statute have differently regulated them. 2 *Black. Com.* 516, 517.

VII. Again, it is said, that much inconvenience would result from the doctrine, for which we contend. It is said, that an administrator, upon our principles, will continue liable to an interminable extent of time. But how is this inconvenience to be obviated ? By a denial of justice. It is deemed to be no great hardship upon the administrator, that he should be liable, so long as any debt remains due from the estate of the intestate, to the extent of the assets.

VIII. But lastly, it is claimed by the defendants, that the plea in bar, is equivalent to the plea of *plene administravit ;* as the fund which came into their hands as administrators, has been paid over to the persons entitled to it, under the statute of distributions. An administrator, in *England,* is as much bound to distribute, as here ; and yet, who ever heard of such a topic of defence, in *Westminster-Hall ?* This is saying in terms, to a creditor, " I have paid away the assets in my hands, agreeably to the statute of distributions, and have nothing left for you."

It may also be observed, that even, if we are bound to pursue the assets, in equity, we still have a right to settle our claim with the legal representative of *John Booth,* by an action at law.

*R. M. Sherman* and *M. B. Whittlesey,* for the defendants. The merits of this case are to be decided upon the principles which define the duties and liabilities of an administrator. Every man is bound, not only by the principles of law, but *in foro conscientiæ,* to perform his contracts ; but an adminis-

trator is liable only so far as he has received assets. The present defendants are not liable to the plaintiff's claim, even upon the principles of natural law. By the ancient law of *England*, the King might seize all the personal estate of a deceased person ; and creditors were debarred from any claim. And by the law of distributions in that country, the *residuum* of the estate, belonged to the person administering. By our law, the administrator receives the whole estate ; it is his duty to pay the debts, and distribute the *residuum*. For this purpose he is created, and for nothing else. When these things are performed, nothing further can be claimed of him.

But we contend, that for the breach of covenants of seisin and warranty, the executor or administrator cannot, in any case, be subjected, unless a breach has happened in the life time of the covenantor. In the present case, there was no liability existing against the intestate, at the time of his death. At this time, there had been no eviction of the plaintiff, no breach of the covenants. But what is still more conclusive, the eviction, and the consequent breach of covenant, happened after the estate of the intestate had been settled, and the *residuum* paid over to the heir.

Besides, the estate of *John Booth* was represented to be insolvent, and treated as such, until the final settlement of it. By our law, all claims against insolvent estates, are subjected to trial before commissioners ; and the common law courts are ousted of jurisdiction ; and the executor or administrator is protected against suits at law, until the debt is ascertained. Formerly, there was no limitation of time, within which claims against such estates should be exhibited. This provision was not introduced, until the year 1782. The equal distribution of estates is a prominent feature in our law. It is a leading object. If the principles contended for by the plaintiff, were to be adopted, this provision would be evaded, if not wholly useless. In the settlement of insolvent estates, no claim can be paid, but by the allowance of commissioners. If, then, there is any sufficient reason, why the plaintiff's claim could not have been exhibited to the first commissioners, there ought to have been a new board of

commissioners.    Creditors cannot reach the administrators, but through the medium of commissioners.

But it is immaterial whether an estate declared insolvent, finally, proves to be so or not.    In either case, the creditors are concluded by the decision of the commissioners.    *Pender-son* v. *Avery*, 1 *Root's Rep.* 103.    *Canon* v. *Abbot*, 1 *Root's Rep.* 251.    *Nelson* v. *Hubbell*, 2 *Root's Rep.* 423.

Again, by the several statutes limiting the time, within which claims against the estates of deceased persons, shall be exhibited, the plaintiff's claim is barred.

But further, an executor or administrator, is, in no case, liable to creditors, further than he has received assets.    In this case, it is admitted, that the defendants have lawfully divested themselves of every part of the estate of the deceased.

A claim under such circumstances as the present, can never be successfully made.    An administrator, named in a deed containing covenants, is bound to perform such covenants, and may be made liable to the extent of assets, but no further.    He may be bound for the neglect of the ancestor, but not for the neglect of the heir.

We contend further, that the plaintiff might have exhibited his claim before the commissioners; and, in this way, might have obtained complete redress.

Upon the ground assumed by the plaintiff, what is the situation of an administrator?    If such principles are to be adopted, there can be no end to the continuance of his liability.    Surely, a doctrine like this, can never be recognised as sound law.

BRAINARD, J.    (After stating the case.)    The action seems to be for breach of covenants of seisin, of quiet enjoyment, and of warranty.    The first can have no place here, because, clearly barred by the limitation; and the second is unimportant, as it depends on the last.

I have no difficulty with the objection that the declaration does not state an eviction by legal process.    There may be an eviction without legal process, that will amount to a breach of covenant of warranty.    The averment that at the

time of the execution of the deed, the good and elder title was in *Lucy Starr*, to the exclusion of the grantor, and that by force and virtue thereof, she entered into possession, and evicted the plaintiff, is sufficient.

All the difficulty that can arise, is, that the eviction may be by collusion ; but the averment that the older and good title was in *Lucy Starr*, by virtue of which she evicted, is sufficient ; because the existence of such a title is inconsistent with a title in the grantor. The case of *Foster* v. *Pierson*, 4 *Term Rep.* 617. fully settles this point.

But the question is, whether for the breach of a covenant, where the cause of action arises after the death of the covenantor, and after his estate has been represented insolvent, commissioners appointed, the time limited for exhibition of claims expired, report made and accepted ; and after the administrators have exhibited their administration account, and paid all the debts allowed against the estate, with the expenses of settling the same ; and after, by order of the court of probate, they have paid over the surplus to the heir ; the administrators can be liable ?

The essential duties of the administrator are, to collect all the effects of the deceased, make and exhibit a true inventory, pay all the debts and expenses, and under the order of the court of probate, deliver and pay over the residue to the heirs according to law. It is important, for the administrator to know what are the legal debts against the intestate's estate, and when and by what means he can be assured that they are all ascertained. In what manner can this be effected ? I answer, reference must be had to our system of laws : And whether this system is natural or artificial, whether founded in the abstract fitness of things, or in policy, is immaterial.

If the estate be represented insolvent, the limitation by the court of probate, for the exhibition of claims, provided the whole estate be inventoried, is conclusive, as to the extent and amount of the administrator's liability : And this is so, indeed, where the proceedings are regular, whether the estate prove insolvent or not.

If the estate is not represented insolvent, still the limitation of the court of probate, the extent of which is eighteen months, is conclusive on all the creditors within this State. Those living without, are allowed two years, after the expiration of the time limited.

Under this system, an administrator exhibits a true inventory ; represents the estate insolvent ; the court of probate appoints commissioners ; limits a time for the exhibition of claims, at the expiration of which, they make report of all claims allowed, which is accepted : These claims, and all expenses, are paid by the administrator, who, by order of the court of probate, delivers over the surplus to the heir at law. Is not this, in effect, a full administration, or in other words, a complete discharge of all duties imposed on him by our system ? Every step has been taken in compliance with it, and to the full extent of its demand, the property has gone where the law directs it to go, so far at least, as respects the administrator, and there is nothing left.

But it is said, that an administrator ought to take bond from the heir to indemnify himself against the contingency of future claims. Is it so, that an administrator is bound to guard himself by security, precarious, from the effect of time, against contingent claims ; claims, which may not arise until after a lapse of years ? There is, indeed, a clause in the act in relation to the settlement of estates, requiring the heirs to give bond to the court of probate to refund to the administrator their rateable parts, in case debts afterwards be made to appear ; but this is applicable only to estates not represented insolvent, and made too, at a time when there was no limitation to claims against such estate. This was part of an act passed in *October*, 1699 ; and the act limiting claims against solvent estates, and extending the time to its utmost extent, did not pass until *October*, 1782. The provision, therefore, by bond, can be applicable to no claim exhibited two years ; because the law admits none beyond that period. It may be applicable to claims of persons living out of the State, who have the benefit of the extra six months.

It is idle to guard by bond against claims that can never exist.

The essence of the argument is, however, that as the claim did not exist until after the expiration of the time limited by the court of probate, and as, of course, it could not have been exhibited, therefore it is not barred. But my reasoning is, that as the claim was not exhibited until after the time limited, and as it was within no saving, therefore, it is barred.

The administrator, as the personal representative of the deceased, is answerable for all his covenants, whether broken before or after his death; provided, the claim be exhibited within the time limited, or by law allowed; broken, indeed, they must be, before claimed and allowed.

It is further said, let us go against the administrator, for against him only can we prove our claim, and no one else can contest it;—that when our claim is ascertained against the administrator, our object, as respects him, is answered, and he will be protected against the *scire-facias.*

But why suffer judgment to pass against an administrator, when it is manifest, it ought to have no effect against him; when it is apparent from the pleadings, from the facts already existing, that he ought not to be liable upon a *scire-facias?* Why have a judgment against a man in *autre droit*, when, confessedly, it cannot be followed up. The judgment, if any, must be against the goods and estate of the deceased in the hands of the administrator. To say we have a claim against the administrator, even nominally, is begging the question. If my former reasoning be correct, the plaintiff has no claim against him, and, indeed, never had. The claim, therefore, if it exists, must be against the heir, who must also be the proper person to contest it.

The grantor, for himself, his heirs, executors and administrators, covenanted to warrant and defend the premises. This is a covenant real, which descends to the heir, and is binding on him, in regard to assets real by descent, and is also binding on the administrator in regard to personal assets:

of these, however, he is already divested, by due course and order of law.

It does not appear in this case, that the heir received any estate of inheritance from her ancestor, and therefore cannot be liable in regard to assets real by descent. She has not, in ancient phraseology, " other lands to yeald."

The daughter, in one sense, is heir to the covenant of warranty, a covenant real, on which, however, as such, in as much as she received no estate of inheritance, she cannot be liable ; for the heirs intended by the deed, are heirs at common law : but under our statute of distribution, she has received the surplus estate of the covenantor. To this, in her hands, the equity of the claim seems to point. But to reach it may be difficult.

This brings me to ground, on which, I am disposed to tread with caution. Whether it is competent for a court of chancery to find a breach of covenant, and assess damages ? Whether it can direct an issue of the fact to be tried, and damages to be thus assessed, and then apply the remedy itself? Whether any can be made parties to such an issue, real or feigned, but those who are legally parties to the covenant ? may be questions of importance, but not necessary for the decision of this case.

I am of opinion, that there is no error.

REEVE, SWIFT, TRUMBULL, EDMOND and BALDWIN, Js., severally concurred in this opinion.

SMITH and INGERSOLL, Js., dissented.

MITCHELL, Ch. J. also dissented, and delivered the following opinion. Our probate system in *Connecticut* is artificial, and, in many respects, differs from the *English* law relative to the settlement of intestate estates. Our statute has created a joint fund of the real and personal estate, and made both assets in the hands of the administrators, and requires a bond from him, faithfully to administer, not only the goods, chattels and credits, like the stat. 22 and 23. *Car.* 2.

but the *estate* also, of the intestate.   The first and most essential duty of the administrator, is to pay the debts of the intestate ; to satisfy all the creditors, in the first place, before any distribution can be made for the benefit of the heir. The heir is the object of the bounty of the law in this case, as the legatee is of the testator's bounty, in a will.   It is only the *residuum* that belongs to either : For the law will be just before it is generous.   This appropriation of the whole property of an intestate, for the benefit of the creditors, in the first instance, is the most striking feature in our law, and appears in every clause of the statute.   And it was, probably, to save the real estate from being wasted by a thriftless heir, and to secure it for the benefit of the creditor, that our law has placed it in the hands of the administrator, and required a bond that this also, as well as the personal property, shall be administered according to law.

In pursuance of this object, the law requires public notice, to be given to the creditors, for the exhibition of debts, and provides for the payment of all such as shall be exhibited and allowed before any distribution be made.   But lest some remain unsatisfied, after distribution, to secure these also, it further provides, and requires from every heir, to whom any part or share shall be allotted, a bond with sureties, " to refund or pay back to the administrator, his or her rateable part of any debt which shall be made to appear against such estate," after the time limited for the settlement thereof by the court of probate : Thus effectually preserving a security for all claims against such estates, to the amount of all the assets real and personal.   But what claims are there " which shall afterwards be made to appear," within the meaning and intent of this act ?  These cannot be merely the claims of creditors *without* the State, for another section provides expressly for those; neither can they be the claims of creditors *within* the State, which have actually arisen and accrued previous to the expiration of the time limited by the court of probate for the settlement ; because the 21st section of the act provides, " that if any creditor neglects to exhibit his claim within such time, he shall forever be debarred of his

demand;" and if this clause was intended to cut off any demands whatever, those must be the creditors, if any, who are chargeable with *neglect*.

This provision requiring a bond to the administrator for the payment of future claims, must then, have been intended for such claims, as could not have been ascertained and allowed by the court of probate, within the time limited; such as indemnity bonds not yet forfeited, collateral undertakings not then due, or personal covenants not then broken; which might be *debitum in presenti, solvendum in futuro :* Because, the subsequent section had absolutely debarred and cut off all others within the State, which the creditors had neglected to present, and therefore no others afterwards could appear, but such as should afterwards actually arise or accrue. And no such claim could have been presented before, because none such existed within the time : a creditor of this description could not have been designated in the statute, as one who had neglected to present a claim, which he then could not have proved ; nor could it have been the intention of the legislature, to subject the creditor to the loss of his debt, by imputing neglect to him for not presenting a claim, which the court of probate could not have allowed, if exhibited at the time.

And must he, therefore, be stripped of the security of his covenants ? Must the death of the covenantor, and the mere lapse of time before the covenants were broken, discharge the covenants ? If not, I ask, against whom could they arise ? Against whom could they afterwards appear ? If against the *heir alone*, why does the statute require a bond from the heir to refund and pay to the administrator his proportional part of such debts, as should afterwards appear, *with the charges* of the administrator in defending them ? This bond can never be forfeited, if the administrator is not to be accountable for debts afterwards arising; because all others within the State, as has already been shewn, are barred by the subsequent clause.

This provision, then, must be nugatory and inoperative. In the mean time, upon this principle, the bond of the ad-

ministrator to the court of probate, has been fulfilled by a distribution of the estate, and the acceptance of this bond from the heir; and as no other bond or security for such creditors, is required from the heirs, the property which the law intended to guard and preserve for the creditors' benefit, may be squandered with impunity, and without any remedy, and the creditors left without redress. But suppose that the administrator distributes a part to some of the heirs, who give bonds with surety; and to others, who cannot or will not obtain sureties, he should refuse to distribute; and in this state of things, a right of action first accrues to the covenantee in a deed of the intestate; shall he sue those who have received their distributive shares, and recover *pro rata?* And may the others plead no assets in their hands, while the administrator protects himself by lapse of time, with assets sufficient in his hands? Or shall the creditor sue the heirs who have received their shares and the administrator jointly? This principle appears to me to be pregnant with absurdities, and tending to the destruction of all the covenants of warranty in our title deeds.

But on the other hand, if the administrator is held accountable, and we consider the bonds from the heirs as assets in his hands, when he has distributed the property, there can be no difficulty in any case. His security is ample; he can recover at any length of time. The judgment against him must always be to recover of the goods, chattels and estate of the deceased in his hands; the creditors will have the protection the law intended; and this comports strictly with the conditions of the administration bond; and is conformable to the law in analogous cases.

In this case, the covenants of warranty and quiet enjoyment were not broken, until after the time limited by the court of probate had expired. No claim for this breach, therefore, could have been presented; and this action is founded as well upon the covenant of warranty as upon the covenant of seisin. It is sufficient, that the plaintiff proves a breach of either of the covenants to entitle him to a recovery. The plea admits the breach of all the covenants, and as he

Vol. V.                              M m

could not have had his damages ascertained by the court of probate before eviction, on the covenant of warranty, I think he has chosen the proper mode of redress, and a legal one. I think the judgment erroneous.

Judgment affirmed.