The town of EAST-HARTFORD *against* PITKIN and others, executors of ELISHA PITKIN, deceased.

Where the declaration, in an action for the support of a female slave, averred, that she was poor and destitute, in need of food, clothing, medicine and attention, and had no relations of sufficient ability to support her ; it was held, that her poverty and impotency were sufficiently set forth.

Where a slave, after the death of her master, being neglected by his representatives, thus came to want, it was held to be the duty of the select-men of the town in which she resided, to relieve her.

*Qu.* Whether the town, in such case, can sustain an action against the *executors* of the master, for the supplies furnished ; the claim not being a debt due from him, or one for which he was liable, at the time of his death.

THIS was an action of *assumpsit.* The declaration alleged, That *Elisha Pitkin,* a settled inhabitant of *East-Hartford,* died in *August,* 1819 ; that he left, at his decease, a negro female slave, named *Flora,* who then was, and ever since has been, a settled inhabitant of that town ; that he was, during his life, and his estate has been, since his death, liable for her support ; that she was and is part of the estate of the deceased ; that she was never manumitted, but now is, and ever since his death, has been holden as a slave, and part of the estate of the defendants as executors. The declaration then alleged, That on or about the 1st of *March,* 1828, *Flora* became poor and destitute, and has, at all times since, been in need of food, cloth-

*Hartford,*
June, 1831.

East-Hartford
*v.*
Pitkin.

ing, medicine and attention ; that she has no relations of sufficient ability to support her ; that between the 1st of *March* aforesaid, and the date of this writ, the town of *East-Hartford,* by their select-men, expended 300 dollars in her necessary support ; and that the defendants have, at all times, known the facts aforesaid, and were especially notified thereof, on the 20th of *October*, 1830, and thereupon became liable, &c. and being so liable, assumed and promised, &c.

To this declaration there was a demurrer ; and the case was reserved for the advice of this Court.

*Toucey,* in support of the demurrer, contended, 1. That the condition of the person for whom the supplies were furnished, was not so set forth as to shew that she was a pauper within our statute.

2. That a town is not obliged, by law, to relieve a slave, especially one whose master is able to support him ; and consequently, the plaintiffs are in the condition of mere volunteers, and are not entitled to sue for a reimbursement of the expenses which they have incurred. The duty of support, during the subsistence of the relation, rests on the master alone. By positive statute, the master is made liable, generally, for support furnished to the slave *coming to want after emancipation. Stat.* 428. *tit.* 93. *s.* 2. This shews, that aside from such provision, or in cases to which it does not extend, the master is not liable. In *Columbia* v. *Williams*, 3 *Conn. Rep.* 467. 471. it was accordingly held, by *Hosmer*, Ch. J. delivering the opinion of the Court, that the town in which a slave in necessitous circumstances was settled, before the existence of the law referred to, " was deficient in remedy against the master and owner of the slave." Slavery is not founded in reason and justice, like the relations of husband and wife, and parent and child ; and arguments derived from those relations are inapplicable to the condition of a slave.

3. That if the testator, in his life-time, would be liable for supplies furnished without his authority, to his slave needing relief, his executors, after his death, are not liable. *Kingsbury* v. *Tolland*, 2 *Root*, 355. The supplies were not furnished until after the testator's death. Here was no debt due from, or liability incurred by, *him.* If the defendants now own the slave, then sue them as owners, not as executors. To make the defendants liable as executors, it should at least appear, that they had assets : a fact not averred in the declaration.

*W. W. Ellsworth*, contra, contended, 1. That the relation of master and slave is one recognized by the laws of this state. *Stat.* 428. *tit.* 93. *Windsor* v. *Hartford*, 2 *Conn. Rep.* 355. *Columbia* v. *Williams*, 3 *Conn. Rep.* 467.

*Hartford,*
June, 1831.

East-Hartford
*v.*
Pitkin.

2. That while this relation exists, the master is liable for the support of the slave.

3. That the slave in question, not having been emancipated, is now a part of the estate of *Elisha Pitkin.* His death did not emancipate her, or discharge her obligations; and the corresponding duties and liabilities of the owner remain unchanged. His representatives, who now hold her as he held her, and who can sell her at any hour, are liable as he would have been, had he lived.

4. That it appearing, that this slave was poor and destitute, and in need of food, clothing, &c. it was the duty of the town of *East-Hartford,* in which she resided, and in which she had a legal settlement, to relieve her.

5. That this duty having been performed, the remedy over is at law. *Pitkin* v. *Pitkin,* 7 *Conn. Rep.* 315. 318.

DAGGETT, J. The demurrer was argued on the ground that no express promise existed; but the question presented was, whether the defendants were liable on the implied promise of law arising out of the facts of the case. Three objections were urged to the sufficiency of the declaration.

1. It was said, that the allegations of the poverty and impotency of *Flora*, were not explicitly stated. It is difficult to see the force of this objection. It is alleged, that she was poor, destitute, and in need of the necessaries of life, and that she had no relations of sufficient ability to support her. These averments are quite sufficient.

2. It is objected, that the town of *East-Hartford* were not liable for her support, and therefore, they have furnished this support voluntarily, and cannot call on the defendants for a reimbursement of their expenditures. This position is worthy of great consideration, and, if true, is decisive against the plaintiffs' right of recovery.

Here I would observe, that the counsel, on both sides, insist, that *Elisha Pitkin*, if living, would be, and his estate since his death, is, liable for the support of this slave. There can be no doubt of this position. It was never doubted, that a master was obliged to support his slave. From the first toleration of

*Hartford,*
June, 1831.

East-Hartford
*v.*
Pitkin.

slavery in this state to the present hour, there never has exist-ed a question on this subject.    The slave was bound to serve his master ; and this created a corresponding duty on the part of the master to furnish him or her support.

By the statute, title 93. *Slavery*, it is provided, in the second section, page 428. that in case slaves emancipated, by their masters, come to want, after their emancipation, they shall be supported, by their masters respectively, their heirs, executors or administrators ; and on their refusal, the select-men of the town where they belong shall provide for their support ; and the town shall be entitled, in a proper action on the case, to recover all the expense of such support from the owners or masters of such slaves, their heirs, executors or administrators. In this case, it is alleged, that *Flora*, the slave, never was emancipated.    She is not, therefore, embraced by this section.

The question then occurs, is she a pauper of the town of *East-Hartford ?*    For paupers the select-men are authorized to furnish support.    It is believed, that the towns would be very reluctant to admit, that all slaves, who come to want, were of their towns, and could claim support.    If indeed a case should arise, where a master and the slave were both poor, impotent and unable to provide for themselves, then the town might be subjected to their support ; but that is not this case.    Here is no pretence of inability in the representatives of *Elisha Pitkin*, the defendants' testator.    It is, then, pre-cisely like the case, where the town provide for the child of a person of property, and afterwards sue him for reimburse-ment.    Such is not a case provided for, by the statute ; and of course, there can be no recovery.    There is a binding obli-gation on the father to support his child until he arrives at twenty-one years of age.    This is a duty prescribed by the law of nature.    The child, in return, is bound to serve the parent until that period.    On the same principle, the master is bound to support the slave, where slavery is tolerated, for the service which the slave is bound to render.    The husband is also bound to support the wife, because he is entitled to her service, to her goods and chattels, and to the use of her real estate.    These principles rest on the common law.    The case before us, then, is one, where the common law obliges the master, if living, and his representatives, when he has deceas-ed, to provide for and support this slave ; nor is there any al-legation in this declaration of any inability on the part of these executors to furnish this support.

I then enquire how the town of *East-Hartford* became liable to support *Flora*, or why this corporation should have any claim for expenditures towards her subsistence? If there be any one principle of law clear of all dispute, it is, that a town is bound to afford support to those who are needy, *only* in the cases provided for in the statute, and in the manner therein specified. A manumitted slave, in case he needs support, may be furnished with it, by the town, and a recovery be had of the master or his representatives. That is certainly not this case.

The statute also provides, that it shall be the duty of the select-men to provide for all *paupers ;* but *Flora* is not a pauper, in the sense of the statute ; for we have seen, that the estate of her master is liable for her support. As well might it be said, that a wife, who was cast off, by her husband, or that a child turned out of doors destitute, by his father, are paupers of the town where they belong. The principle adopted, by this Court, in *Newtown* v. *Danbury, 3 Conn. Rep.* 553. is in point. There the counsel for the town of *Danbury,* contended, that the town could not be liable for the support of a wife, if her husband was of sufficient ability ; and the superior court adopted the idea, and submitted to the jury the question whether his property or responsibility was such, that she could be deemed a pauper ; and this opinion was sanctioned by this Court.

There is another case, where a town is obliged to support a person destitute, and where an action is provided for a reimbursement of the expense. That is where an inhabitant of one town becomes destitute in another town, the select-men of the latter may furnish the necessary support, and by a compliance with certain requisites of the statute, may recover the amount of the expenditures in an action against the town to which the pauper belongs.

It is also by statute made the duty of certain persons standing in the relation of father and mother, grand-father and grand-mother, children and grand-children, when of sufficient ability, to provide for their relations within those degrees, who are poor, impotent and unable to provide for themselves ; and in case of refusal, the select-men, or one or more of the relations, may make application to the county court, who shall order such support in the manner pointed out. But this statute is not retrospective ; it does not provide for a reimbursement of any expenses already incurred. *Wethersfield* v. *Montague*

*Hartford, June, 1831.*

*East-Hartford v. Pitkin.*

& al. 3 *Conn. Rep.* 507. *Cook* v. *Bradley,* 7 *Conn. Rep.* 57. *Mills* v. *Wyman,* 3 *Pick.* 207. 212.   If therefore, the plaintiffs had brought themselves within the statute, which they have not, still they could not recover.

If these views are correct, it is unnecessary to consider the third point.

HOSMER, Ch. J. was of the same opinion.

PETERS, J. 1. I concur in the opinion of my Brother *Daggett,* on the first point, that being poor, destitute, in want of food, clothing, medicine and attention, and without ability to support her, is a sufficient averment of *Flora's* inability to provide for herself: if not, it is owing to the poverty of the *English* language, which *Camden* says, " is as copious, pithy and significative as any other in *Europe.*"   *Bailey's Dict. Introduct.*

2. I also concur in the result of his opinion on the second point ; but not for the reasons by him assigned.   The relation of master and servant, or qualified slavery, has existed in *Connecticut* from time immemorial ; and has been *tolerated,* (not sanctioned,) by the legislature.   But absolute slavery, where the master has unlimited power over the life of his slave, has never been permitted in this state. 2 *Swift's Syst.* 348. 1 *Bla. Comm.* 448.   *Flora* was the slave and personal property of *Elisha Pitkin,* at the time of his death ; and I regret, that I cannot *authoritatively* adopt the language of an *English* judge : " A negro is a man ; and a man may be the owner, but cannot be the subject, of property."   Vid. *Smith* v. *Brown* & al. 2 *Salk.* 666.   Upon the death of her master, *Flora,* not being specifically devised, was transferred to the defendants, and being *a chattel,* vested in them ; for the personal estate of a deceased testator vests absolutely in his executors.   *Dighton* v. *Freetown,* 4 *Mass. Rep.* 539. *Sumner* v. *Williams,* 8 *Mass. Rep.* 198. per *Sewall,* J.   They alone could sell her ; they became her masters, and she their slave ; and they alone were to maintain her, until she was *distributed* to his heirs or legatees ; and this obligation followed the right of property upon every transfer.

From the facts stated in this declaration, it is apparent, that *Flora* was a pauper.   Was she a pauper of *East-Hartford ? Elisha Pitkin* was settled there ; and her settlement followed his.   *Dighton* v. *Freetown,* 4 *Mass. Rep.* 539. *Winchendon* v.

*Hatfield,* 4 *Mass. Rep.* 123. His death deprived her of his support; and the defendants cast her off, destitute of the necessaries of life! In this situation, the select-men of *East-Hartford* found her in their town, and provided for her relief. Was this a voluntary courtesy, or the performance of a legal duty? Our poor laws are bottomed on humanity and charity. The select-men are the almoners of the state, the guardians of the poor, and bound to provide for all persons in their towns, who cannot provide for themselves. *Kent* v. *Chaplin,* 6 *Conn. Rep.* 72. *Simmons* v. *Wilmot,* 3 *Esp. Rep.* 91. Hence the solicitude of the legislature manifest in all our statutes relative to the poor and the admission of inhabitants to exclude foreign and transient paupers, to prevent them from being burthensome and chargeable to towns. *Stat.* 59. 95. revis. 1702, and all the subsequent revisions. Those statutes are all *pari materia ;* and their principal object is, to enable towns to rid themselves of such burthens. If select-men were bound to provide for their own poor only, why has the legislature denounced penalties against strangers, who come to reside in our towns, and against those who import, entertain or hire them, without first giving security to save the town free from all expence that might be occasioned thereby? By the common law, parishes are obliged to relieve *casual* poor. *Simmons* v. *Wilmot, ubi supra. Wennall* v. *Adney,* 3 *Bos. & Pul.* 253. *per* Lord *Alvanley.* Such also has been the practice here; which has been sanctioned, by repeated decisions. In *Buell* v. *Hebron,* at *Tolland,* about 1796, a poor alien broke his leg in the highway in *Hebron,* and was carried into the plaintiff's house and nursed until cured. The account was laid before the Governor and Council, and was rejected, because the select-men could not certify, that he was warned to depart within three months after he came into the town. *Buell* sued the town and recovered. In *Skinner* v. *Lebanon,* at *Windham,* in 1811, a vagrant female came to the house of the plaintiff, who was a physician. He assisted and nursed her, during her accouchment; and claimed payment of the select-men, which was refused. He then sued the town and recovered.

But it is said, that this case is precisely like the one where the town provides for the wife and child of a man of property, and afterwards sues him for reimbursement; which is not a case provided for by statute, and of course there can be no re-

*Hartford,*
June, 1831.

East-Hartford
*v.*
Pitkin.

covery. I admit the premises; but deny the consequence. By the common law, as well as by the law of nature, a father is obliged to provide for his wife and children. *Waltham* v. *Sparks,* 1 *Ld. Raym.* 41. So in *Somers* v. *Kibbe,* at *Tolland,* in 1804, *Kibbe* was committed to gaol for debt, and took the poor prisoner's oath, and was supported by the creditor, who appealed to a judge and justice, who ordered the support to cease, because the debtor had made a fraudulent conveyance of his real estate. The debtor remained a long time in gaol, and was supported by the sheriff, who sued *Somers,* where *Kibbe* was settled, and recovered. *Somers* then sued *Kibbe* for the money paid for him, recovered, levied on the land fraudulently conveyed, and recovered in ejectment. If a parent, says the late Ch. J. *Swift,* neglects to supply his children with necessaries, a third person may do it, and charge the parent with the amount. 1 *Swift's Dig.* 41. And so said the supreme court of *New-York,* in *Van Valkenburgh* v. *Watson &* al. 13 *Johns. Rep.* 480. where an infant had been furnished with necessaries, by strangers, who sued the father therefor. The court said, a parent is under a natural obligation to furnish necessaries for his infant children; and if the parent neglect that duty, any other person who supplies such necessaries, is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise on the part of the parent.

3. When an executor covenants or promises, he binds himself personally, and not the heirs or estate of his testator. In *Wheeler* v. *Collier, Cro. Eliz.* 406. the baron of the defendant owed the plaintiff 50*l.* for beer, and died intestate; and administration was committed to her. Afterwards, the defendant, in consideration that the plaintiff would deliver to her six barrels of beer, assumed to pay the plaintiff, as well the 50*l.* due by the intestate, as for the six barrels delivered to herself. After verdict for the plaintiff and entire damages, it was moved in arrest, that the plaintiff should not recover, because for the intestate's debt judgment should be against the defendant *de bonis intestati,* and for the beer delivered to her, de *bonis propriis.* The court said: "This action is brought against her of her own *assumpsit.* The judgment shall be general, in both cases, *de bonis propriis;* for it is a charge by her own act. And here, by her *assumpsit* as administratrix, it is become her own proper debt, as if she had entered into

an obligation." In *Rose & ux.* v. *Bowler & al.* 1 *H. Bla.* 108. <span>**Hartford,**</span> the declaration contained the money counts, alleging a liability June, 1831. in the defendants as executors, and a promise by them as such, East-Hartford for which they demurred specially ; the court said, that the <span>v.</span> <span>**Pitkin.**</span> defendants were declared against as executors in every count, but that the latter were such as would make the defendants personally liable. An executor cannot be charged, as such, either for money had and received by him, money lent to him or on an account stated of money due from him as such ; these charges making him personally liable. The same point was decided in *Barry* v. *Rush,* 1 *Term Rep.* 691. where the defendant, *as administrator,* bound himself, his executors and administrators, by bond. " The question then is," said *Buller,* J., " whether he has bound himself *personally,* or not ? And I think, there can be no doubt that he has." Vide *Brigden* v. *Parkes* & al. 2 *Bos. & Pull.* 423. *Jennings* v. *Newman,* 4 *Term Rep.* 347. In *Sumner* v. *Williams,* 8 *Mass. Rep.* 162. where the defendants, as administrators under a licence of court, sold real estate, and covenanted, that as administrators they were well seised of the premises, and would, as administrators, warrant and defend the same to the grantees, their heirs, &c., and signed the deed as administrators ; it was held, that they were personally liable on their covenants. The same principle was recognized, by this Court, in *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 49. and in *Belden* v. *Seymour* & al. 8 *Conn. Rep.* 19., and by the supreme court of the *United States,* in *Duvall* v. *Craig,* 2 *Wheat.* 46. where the defendants, as trustees, conveyed real estate, and, as trustees, entered into the usual covenants of seisin and warranty. *Story,* J., in delivering the opinion of the court, said : " If he [the trustee] chooses to bind himself, by a personal covenant, he is liable at law for a breach thereof, in the same manner as any other person, although he describe himself as covenanting as trustee ; for in such case, the covenant binds him personally, and the addition of the words *as trustee,* is but matter of description, to show the character in which he acts, for his own protection, and in no degree affects the rights or remedies of the other party. The authorities are very elaborate on this subject. An agent or executor, who covenants in his own name, and yet describes himself as agent or executor, is personally liable, for the obvious reason, that the one has no principal to bind, and the other

substitutes himself for his principal." 1 *Wheat.* 56. and see the authorities collected in a note, *ibid.*

Thus has stood the law for nearly three centuries; and has been twice recently recognized by this Court; and will probably stand three centuries more, notwithstanding the late attempts of an *English* court to shake the authorities on this subject, though it had not the courage to overrule them. This was in *Ashby* v. *Ashby* & al. 1 *Mann. & Ryl.* 180. (17 *Serg. & Lowb.* 235.) That was an action of *assumpsit* against the defendants as executors. The declaration contained four counts, all framed precisely like those in *Rose* & ux. v. *Bowler* & al.; which was adjudged ill, on demurrer. The court decided, that a count charging the defendants personally, could not be joined with one charging them in *autre droit.* In coming to this conclusion, Lord *Tenterden* said: "It is not necessary to come to any conclusion on the first count. The authorities shewing that the second count cannot be joined with the third, are so numerous and decisive, that I find it impossible to get over them."

I would advise the superior court, that the declaration is insufficient.

WILLIAMS, J. If under the demurrer in this case an actual promise might be presumed, yet this has not been claimed. On the contrary, the plaintiffs have expressly admitted, that the question to be settled is, whether on these facts the law will imply a promise.

That slavery has existed in this state, cannot be denied; and a few solitary cases still exist to attest to the melancholy truth. And yet it has been contended, by the counsel on the part of the defendants, that our law imposes no duty on the master to support his slave; in support of which is cited the statute making the owner, his heirs, executors, &c. liable for the support of slaves manumitted under certain circumstances. It is certainly true, that that statute applies only to the case of manumitted slaves; but that it does not therefore follow, that the master was not liable before that statute for the support of slaves not manumitted. The objection resulted from the very nature of the relation. The man who had a right to all the time and services and even offspring of his unhappy slave, must, of course, be bound to maintain him. And we might as well look into the statute book, to find the duty created, which binds a husband to maintain his wife, or a parent his infant

child, as that of a master to support his slave. Those principles of the common law, which will restrain a master from cruel and barbarous punishment of his servants, or the inhuman beating of his beasts, will not permit him to suffer his slave to starve. Laws which sanctioned or suffered such inhumanity, would stain even the pages of the history of slavery. But such is not the law; and Ch. J. *Parsons,* after reviewing the situation of the slave, as it existed in that state, (and its features were the same in all the old *New-England* states) says: " It is manifest that the master was bound to support him." *Winchendon* v. *Hatfield,* 4 *Mass. Rep.* 129. *Elisha Pitkin,* then, was bound to support *Flora.*

Are not his representatives equally bound? This has not been directly questioned. It is, however, claimed, that his heirs, not his executors, are bound. *Kingsbury* v. *Tolland,* 2 *Root,* 355. That case, be it remarked, arose under the statute before alluded to, as to the mode of supporting slaves, that were manumitted by their owner; and the court say, that the heir, to whom the slave would have belonged, if it had not been manumitted, and not the executor, is liable. Whether that decision was founded on the words of that statute or not, does not appear. It was, however, but a decision of the superior court; of course, not binding upon this Court.

If it be said, that the executor is not liable for debts accruing after the death of the testator, it is answered, that where the demand arises from an obligation existing upon the testator in his life, the executor may be liable; as where the testator has entered into covenants to warrant land, and the covenants are not broken until after his death; (*Booth* v. *Starr,* 5 *Day,* 275. *Griswold* v. *Bigelow,* 6 *Conn. Rep.* 258.) or where he has entered into covenants relative to premises demised, and after his death, those covenants are broken, by an assignee, or by the executor. *Wilson* v. *Wigg* & al. 10 *East,* 313. In those cases, as well as in this, the demand arises only upon the breach, which there, as well as here, accrues after the death of the testator; but in both cases, it is founded upon an obligation previously existing,—there upon the bond or deed,—here upon the duty imposed from the relation of master and servant. The defendants, then, as representatives of *Elisha Pitkin,* are liable for the support of this slave.

Another view may be taken of this subject. Upon the death of *Elisha Pitkin,* this slave did not vest in the heirs, but being personal property, was assets in the hands of the executor.

*Dighton* v. *Freetown,* 4 *Mass. Rep.* 539. *Andover* v. *Canton,* 13 *Mass. Rep.* 547. 552. It is true, that the executor is a mere trustee ; but still his legal rights are the same.

It may be said, that if the defendants are owners, they cannot be sued as executors. On this subject I know the *English* cases have gone a great way. But when I find such a judge as *Bayley* saying, that he reluctantly submitted to those cases, but could not see the reason of them, and Lord *Tenterden* doubting them, as in *Ashby* v. *Ashby,* 1 *Mann. & Ryl.* 180. (17 *Serg. & Lowb.* 235.) I am not disposed to apply them to a case like this. When therefore, it appears, that these defendants are owners only as representing this estate, and that what they pay must be paid from the estate, and is due from them only because they represent the estate, I think, that we are not bound, on this state of the pleading, to say, that they are not liable as executors, even if they might have been personally sued.

It was also objected, that it is not shewn, that the executors had assets. That allegation is never made, in ordinary suits against executors,—*e. g.* on promissory notes given by the testator. Our law infers the duty of the executor to pay the demands against the estate from the fact that he is executor ; and it is for him to shew how he is exempted from that liability.

The executors, then, having neglected their duty, was the town in which this woman resided, bound to support her ? It is said, that it did not appear but she could support herself. But it does appear, that she was poor and destitute ; in want of food, and clothing and medicine ; that she was a slave, whose earnings were not her own ; and that she had no relations of ability to support her. Our statute directs, that "all poor and impotent persons, who have not estate sufficient for their support, and have no relations of sufficient ability, who are obliged by law to support them, shall be provided for and supported by the town," &c. *Stat.* 370. *tit.* 73. *s.* 2. It is the intention of our poor laws, that no one shall be left to starve. These facts being admitted, this woman must be relieved, by the town where she was, or starve.

Again, it is said, that there were those, whose duty it was to relieve her. Was it proper for the select-men of *East-Hartford* to suffer her to remain in this situation, until those whose duty it was, voluntarily came forward, and were legally com-

pelled to assist her ? These persons may have been absent in *Hartford,* other states or foreign countries ; or they may deny their ob- June, 1831. ligation, or claim the assistance of others. Shall the pauper East-Hartford wait for her food, medicine, &c. until they return, or those *v.* Pitkin. questions are judicially settled ?

It is said again, that she is not a pauper within the statute, if she has relations who are of sufficient ability and are bound to maintain her. Such a construction must be given to this statute as will carry into effect its spirit as well as its letter. The persons intended must be those who cannot command assistance from their own resources, or from those who are bound to assist them, in time to prevent extreme suffering. Thus, if a husband turns his wife out of doors, without cause, under such circumstances that she cannot obtain credit for immediate subsistence, it seems to me, the select-men of the town are bound to provide for her. And the case of *Newtown* v. *Danbury,* in my opinion, supports this position. There, the wife of *Clark,* who was an inhabitant of *Danbury,* being destitute and deranged, wandered into the town of *Newtown,* and was assisted by the select-men of that town. In a suit against the town of *Danbury,* for the supplies, the defendants claimed, that *Clark* was of sufficient ability to support his wife. But the judge instructed the jury, that the real question was, whether she *needed* the assistance rendered within the meaning of the law ; and in determining that question, it was competent for the jury to consider the situation of the husband as to property, his responsibility and the probability or possibility of her necessities being supplied upon his credit. He did not place it merely upon his ability to support his wife. I know, that the Chief Justice, in giving the opinion of the Court, affirming that judgment, says, that the jury, upon this charge, must have found, that the husband had neither property nor credit. But if it was necessary that the jury should find, that the husband was destitute of property, then the charge could not have been correct ; for the judge told them, that they might not only consider the ability of the husband, but the probability or possibility of her necessities being supplied upon his credit. If proof of the husband's property or ability was enough to defeat the suit, the jury must have been told, that if that fact was found, they need make no other inquiries, but must find for the defendants. But as the husband's property might be real estate, or covered with mortgages or attach-

ments, or he might have notified the public that he would not pay for his wife's support; these, or circumstances of a similar character, might have destroyed his credit and prevented her necessities from being supplied upon his responsibility. Circumstances of this kind, I understood the judge to say, may be taken into consideration, not certainly merely to shew his ability, but to shew, that she needed the relief; which, says the judge, is the real question. From the opinion of the judge at the circuit, in that case, affirmed by this Court, I am confirmed in the idea, that the question is not to be placed upon the narrow ground of the husband's property. If in that case, it was proper for the jury to consider whether *Sally Clark* could obtain relief on the credit of her husband, it was equally proper, that it should be considered, in this case, whether *Flora* could obtain relief upon the credit of these defendants; and if they meant to make the claim, they should not have demurred to a declaration, in which there is an allegation that there is no person who is bound to support her.

Again, it is said, that if the town of *East-Hartford* were bound to relieve this woman as a pauper, they can have no remedy; that in no case can a town recover for the relief of a pauper, except in the single case of a town that has relieved the wants of an inhabitant of another town; and that this depends upon statute. Should it be admitted, that a town can have no relief against the *pauper* himself for supplies furnished him under the law requiring that support, it would not decide this case. Here the owner of the slave is primarily liable; and it is only his neglect of duty, which makes the defendants liable at all; and it is admitted, that in consequence of that neglect, the defendants would be responsible to any individual, who supplied the necessities of the slave. To me no reason appears why those who have received the benefit of those supplies, should not be responsible to the town which has furnished them, as well as to the individuals, who may have done the same thing. The same benefit has been received. Why, then, does not the same liability exist? It seems strange to say, that if one, prompted by motives of humanity, does an act, which it is my duty to do, he may call upon me, upon an implied promise; but if, in addition to the former motive, another is added—that the law requires it—no promise can be implied.

It does not follow of course, because our statute has in one

case given a remedy, by one town against another, that where *Hartford,* the statute has omitted to give a remedy, none exists. In June, 1831. many cases where a duty is imposed, the common law supplies East-Hartford the remedy. Thus an antient statute provided, that when an *v.* Pitkin. inhabitant of one town was visited with sickness in another town, and thus occasioned a charge to that town, the selectman might lay the account before the county court, who might adjust the same, and order payment by the treasurer or selectmen, and award execution, if such person had not parents, or masters or other relations bound to support them. *Stat.* 226. *tit.* Sickness. *ed.* 1750. An action of *assumpsit,* during the existence of this law, was pending before the superior court, and the defendants claimed, that as the statute gave the remedy, that action would not lie. But it was adjudged, that the action was well brought ; and the court said, that as it was the duty of every town to provide for its own poor, the common law supplied a remedy, and that was not taken away, by the summary mode of redress given by that statute. *Wethersfield* v. *Stanford,* 1 *Root,* 68. This, it is true, is a decision of the superior court ; but it has always been recognized as law. Judge *Swift,* in commenting upon this statute, adds :—If the persons so relieved had parents, masters or relations bound to support them, then the expense is recoverable of those persons, who are bound to provide this support." 1 *Swift's Syst.* 119. This opinion of that eminent jurist, who so ably presided in this Court, is precisely in point ; and the opinion of the superior court in principle supports the doctrine for which I contend ; for there it was the duty of the town of *Wethersfield,* where the pauper was found, to relieve him, as it was here the duty of *East-Hartford* to relieve *Flora.* As the common law there furnishes a remedy, why not here ? If in this case the parties had gone to issue under the same instructions as were given to the jury in the case of *Newtown* v. *Danbury,* I see not why there must not have been the same result. And if the defendants intended to claim, that *Flora* could have been supplied upon their credit, they should have traversed the facts alleged in this declaration.

It has been decided, I admit, that if a town claim that certain relations pointed out in the statute shall support their poor relations, application must be made founded upon that statute ; because the statute directs how the ability shall be tried, and how the proportions between different relatives shall be settled.

*Gilbert* v. *Lines*, 2 *Root*, 168. And it has been held, that the statute is prospective only in its operation. *Wethersfield* v. *Montague* & al. 3 *Conn. Rep.* 507. But I see not what effect these decisions are to have on this case, unless it can be shewn, that this is a case embraced by that statute. That statute provides, that relations standing in the degree of father and mother, grand-father and grand-mother, child and grand-child shall, if of sufficient ability, provide for their poor relations. It does not allude to the case of master and servant. It is almost a copy of the statute of 43 *Eliz.* in *England,* where slavery was unknown ; one great object of which was to adjust the proportions of expense to be borne by relations of equal degree, but of different ability. It does not allude to the relations of master and servant, not because our legislature did not contemplate that as a subsisting relation, or because they were too fastidious to use intelligible language ; for there existed, until the late revision of the statutes, an act concerning *" negro servants and slaves."* The rights and duties of the parties cannot, therefore, be affected, in any manner, by that statute, or the decisions under it.

Upon the whole, then, it being the duty of these executors to provide for the support of this slave ; and they having neglected their duty ; and the plaintiffs having done the act on which their claim is founded, as it devolved on them in consequence of the neglect of the defendants only ; I consider them standing in a relation to the defendants somewhat like sureties ; and I see not why the defendants should not be responsible to them, for an act, which, as their sureties, they were bound to perform, in consequence of the neglect of the principal. By the principles of natural justice, they are bound to refund ; and I am not satisfied, that any technical rule of law can be interposed to prevent it.

My opinion, therefore, is, that the declaration is sufficient.

BISSELL, J. was of the same opinion.

Declaration insufficient.